### Ex parte PETTINE.

#### (District Court, D. Massachusetts. June 3, 1919.)

#### No. 1689.

1. ALIENS ⬅18—DEPORTATION—POWER OF CONGRESS.
   Congress has constitutional power to confer on the executive branch of the federal government authority to deport aliens whose teachings or doings are dangerous to the government and institutions of the United States.

2. ALIENS ⬅53—DEPORTATION OF ANARCHISTS—STATUTES—"PHILOSOPHICAL ANARCHIST."
   Under Act Feb. 5, 1917 (Comp. St. 1918, §§ 959, 960, 4289¼a–4289¼u), and Act Oct. 16, 1918, the executive department of the federal government has authority from Congress to deport aliens who are "anarchists," even though philosophical anarchists, who do not teach violence and force as a means of abolishing government.

3. TREATIES ⬅11—STATUTE AS PARAMOUNT TO TREATY—DEPORTATION OF ALIENS—"PHILOSOPHICAL ANARCHISTS."
   Congress, through Act Oct. 16, 1918, having clearly declared against all alien anarchists, it cannot be successfully contended by Italians about to be deported, so-called "philosophical" anarchists, who do not advocate the use of force and violence, that the deportation of such anarchists would be in violation of the treaty between the United States and Italy, placing Italians on a level with native-born citizens, who, under the right of freedom of speech, may teach anarchistic theories with immunity.

Habeas Corpus. Petition for writ by Anthony V. Pettine, on the relation of Luigi Galleani and others. Petition denied.

Anthony V. Pettine and Pettine & De Pasquale, all of Providence, R. I., for petitioner.

Lewis Goldberg, Asst. U. S. Atty., of Boston, Mass., for Henry J. Skeffington.

ALDRICH, District Judge. This is a petition for a writ of habeas corpus, instituted for the purpose of securing judicial interposition

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

against the enforcement of certain orders made in the executive department of the government, whereby the petitioners are sought to be deported from the United States to the country from whence they came, upon the ground that they are anarchists. Two of the petitioners, Ernesto Perrella and Francisco De Santis, have withdrawn from the petition, for the reason that no final order of deportation has yet been made against them. As to the others, the fact is found by the Department of Labor that they are anarchists, and it is conceded by counsel in argument that there was evidence tending to support the findings. Indeed, it is conceded that they are anarchists; but the point is taken that they do not advocate force or violence against organized government.

[1] The Supreme Court decisions, including such cases as Fong Yue Ting v. United States, 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905, United States v. Williams, 194 U. S. 279, 24 Sup. Ct. 719, 48 L. Ed. 979, Bugajewitz v. Adams, 228 U. S. 585, 33 Sup. Ct. 607, 57 L. Ed. 978, and others, fully support the idea of the constitutional power of Congress to confer upon the executive branch of the government authority to deport aliens whose teachings or doings are dangerous to our government and to our institutions.

The constitutional power of Congress—a power exercised under the idea of an inherent right in the sovereign nation in respect to offensive aliens, a right based upon a power necessary and essential to its safety and welfare, a power so paramount as to be exercised in substantial independence of legal phases, such as those involved in treaties, in questions as to the right of judicial trial, in questions of supposed vested right to remain, in questions about the retroactive operation of its laws, in questions whether deportation is punishment without trial—has been so thoroughly considered and definitely established by the Supreme Court that there would seem to be no occasion for an analysis of its decisions. Nor is there any occasion for discussion as to the character and comprehensiveness of the power of Congress, which must be accepted as well-nigh plenary in its absolutism.

Questions of irregularity of proceedings, in the executive department, might perhaps become questions for the court; but there are no such questions here, nor is there anything in the situation which would justify a review of findings of fact or of questions of law.

The power of Congress having been recognized and established in the broadest sense by the Supreme Court, the only question here is whether the executive branch of the government is acting within the scope of the authority conferred by Congress.

[2] In support of the authority of the executive department the government relies upon various acts of Congress, but chiefly upon the act of October 16, 1918, and that of February 5, 1917 (39 Stat. 874, c. 29 [Comp. St. 1918, §§ 959, 960, 4289¼a–4289¼u]).

The act of October 16, 1918 (40 Stat. 1012, c. 186), is comprehensive and emphatic in declaring against all aliens who are anarchists; and, so far as anarchists are concerned, it would seem that no result depends upon varying degrees of anarchy. Indeed, in enumerating the of-

fensive classes, the enactment at once declares generally against aliens who are anarchists, and then, after separating by a semicolon the sweeping declaration against all anarchists from what follows, Congress proceeds to enumerate special classes of offensive aliens, who may or may not be anarchists, such as those who advocate the overthrow of government by force or violence, or who disbelieve in or are opposed to all organized government and who teach assassination of public officials. But these special designations cannot be accepted as in any way detracting from the general enactment against all aliens who are anarchists.

The act applies itself, not only to aliens who came with offensive theories, but to aliens who have become offensive, and it expressly confers upon the Secretary of Labor authority to take them into custody, and provides for deportation in the manner provided in the Immigration Act of February 5, 1917, and this irrespective of the time of their entry into the United States.

The point is taken by counsel for the petitioners that they are only philosophical anarchists, who do not teach violence. But this point only goes to the degree of offensiveness, and cannot be accepted as an answer to the authority of the executive branch of the government to deport, because, as said in 194 U. S. 279, 294, 24 Sup. Ct. 719, 724 (48 L. Ed. 979):

"If the word 'anarchist' should be interpreted as including aliens whose anarchistic views are professed as those of political philosophers innocent of evil intent, it would follow that Congress was of opinion that the tendency of the general exploitation of such views is so dangerous to the public weal that aliens who hold and advocate them would be undesirable additions to our population, whether permanently or temporarily, whether many or few, and, in the light of previous decisions, the act even in this aspect would not be unconstitutional."

[3] The point is also taken that, by treaty between the government of the United States and Italy, Italians stand on a level with nativeborn citizens, who, it is said, under the right of freedom of speech, may teach anarchistic theories with immunity, and that as a consequence the deportation of alien philosophical anarchists would be in violation of the treaty between the United States and Italy.

Passing all discussion as to the right of freedom of speech as not germane to executive proceedings for deportation under the recent acts of Congress, this view cannot be accepted, because, as said in 149 U. S. 698, 720, 13 Sup. Ct. 1016, 1025 (37 L. Ed. 905):

"In our jurisprudence, it is well settled that the provisions of an act of Congress, passed in the exercise of its constitutional authority, on this as on any other subject, if clear and explicit, must be upheld by the courts, even in contravention of express stipulations in an earlier treaty."

Congress, through the act approved October 16, 1918, having clearly declared against all aliens who are anarchists, the declaration must be accepted as meaning that Congress was of opinion that the presence of alien anarchists is offensive to our society and dangerous to the

government, and it must be assumed that the enactment in this respect was based upon the idea that the government possesses the right to determine who shall be members of its community—a right which may be exercised by all nations, and a right which may be exercised both in peace and war.

For further discussion of the acts of Congress and of executive authority, see the unreported opinion of Judge Knox of December 9, 1918, in the Southern district of New York, in the Lopez Case; also the recent opinion of the Circuit Court of Appeals for the Second Circuit in the same case (259 Fed. 401, —— C. C. A. ——) in affirmance thereof.

No intendment is made against the petitioners because they are at large under bail, and this decision is based upon the idea that no judicial authority is found for interfering with the proceedings of the executive branch of the government, with whom Congress has placed the responsibility.

The petition for habeas corpus is denied.