GUINEY v. BONHAM, U. S. Inspector of Immigration.

(Circuit Court of Appeals, Ninth Circuit. December 1, 1919.)

No. 3384.

1. ALIENS ⬤⟲54—LIMITATION OF PROCEEDING FOR DEPORTATION.
    The five-year limitation clause of Immigration Act, § 19 (Comp. St. 1918, § 4289¼jj), does not apply to the provision for deportation of any alien "who at any time after entry shall be found advocating or teaching the unlawful destruction of property."

2. ALIENS ⬤⟲54—STATUTE APPLICABLE IN DEPORTATION PROCEEDING.
    Although a warrant of arrest for deportation is in terms based on a particular statute, the alien may be deported under a later statute, which under the facts charged is applicable.

3. ALIENS ⬤⟲54—WARRANT FOR ARREST IN PROCEEDING FOR DEPORTATION.
    A warrant for arrest of an alien for deportation need not have the formality and particularity of an indictment, but is sufficient if it give him adequate information of the acts relied on.

4. HABEAS CORPUS ⬤⟲30(3), 97—SCOPE OF INQUIRY.
    The question in habeas corpus is whether the petitioner is lawfully detained at the time of the hearing, and, if so, he is not to be discharged for defects in the original warrant or commitment.

⬤⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. ALIENS ☞54—PROCEEDING FOR DEPORTATION.

A proceeding for deportation of an alien is not unfair because he was not informed of his right to counsel until some evidence had been taken on his preliminary examination before an inspector.

6. ALIENS ☞54—LEGALITY OF DEPORTATION PROCEEDING.

That the record returned by the Department of Labor to a writ of habeas corpus obtained by an alien detained for deportation contained irrelevant matter not introduced in the deportation proceeding does not affect the legality of the order of deportation.

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Habeas corpus by Neil Guiney against R. P. Bonham, United States Inspector in charge of Immigration for the District of Oregon. From an order discharging the writ, petitioner appeals. Affirmed.

George F. Vanderveer and Ralph S. Pierce, both of Seattle, Wash., for appellant.

Bert E. Haney, U. S. Atty., and Barnett H. Goldstein, Asst. U. S. Atty., both of Portland, Or., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The appellant, a native of British Columbia, entered the United States in February or March, 1913. In 1916 he became a member of the Industrial Workers of the World, in which he has held the offices of standing delegate, branch secretary, and traveling delegate. In September, 1918, he became secretary of Lumber Workers' Industrial Union, a branch of the I. W. W., having 35,000 members. In February, 1919, he opened an office for said union in the city of Portland. On February 18, 1919, the Department of Labor issued its warrant of arrest, charging that the appellant had been found advocating or teaching the unlawful destruction of property, in violation of the Immigration Act of February 5, 1917. On this warrant he was granted three hearings, which resulted in an order for his deportation. On appeal to the Department of Labor, the order of deportation was affirmed. The appellant presented to the court below his petition for a writ of habeas corpus. On the hearing the writ was discharged and the appellant was remanded to custody. The appellant appeals.

[1] The appellant contends that deportation under section 19 of the act of February 5, 1917 (39 Stat. 889, c. 29 [Comp. St. 1918, § 4289¼jj]), was barred after five years from the date of his entry into the United States. We do not so read the statute. It provides:

"Sec. 19. That at any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law; any alien who shall have entered or who shall be found in the United States in violation of this Act, or in violation of any other law of the United States; any alien who at any time after entry shall be found advocating or teaching the unlawful destruction of property, or advocating or teaching anarchy, or the overthrow by force or violence of the government of the United States or of all forms of law or the assassination of public officials; any alien who within five years after entry becomes a public charge from causes not af-

firmatively shown to have arisen subsequent to landing, * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported."

It is plainly the intention of the statute to provide for the deportation of any alien who at "any time after entry" shall be found advocating or teaching the unlawful destruction of property. The five-year limitation expressed in the first clause of the statute is not to be read into the clause under which the appellant is ordered deported.

[2] Again, the order of deportation does not depend upon the law of 1917. Act Oct. 16, 1918, c. 186, 40 Stat. 1012, authorizes the deportation of aliens who advocate or teach the unlawful destruction of property and declares:

"The provisions of this section shall be applicable to the classes of aliens mentioned in this act irrespective of the time of their entry into the United States."

The law of 1918 was in force prior to the institution of proceedings against the appellant. The fact that the warrants of arrest and of deportation are in terms based upon section 19 of the act of February 5, 1917, does not render the act of 1918 inapplicable to the case. The principle involved is similar to that which obtains in criminal cases in which it is held that the statute on which an indictment is founded must be determined as a matter of law from the facts charged, which facts may bring the offense within an existing statute, although the indictment in terms bases the charge upon another statute. Williams v. United States, 168 U. S. 382, 18 Sup. Ct. 92, 42 L. Ed. 509; United States v. Nixon, 235 U. S. 231, 35 Sup. Ct. 49, 59 L. Ed. 207; Vedin v. United States, 257 Fed. 550, —— C. C. A. ——.

[3] It has been repeatedly held that the warrant of arrest for deportation of an alien is sufficient if it give him adequate information of the acts relied upon to bring him within the excluded classes, and to enable him to offer testimony to refute the same at the hearing, and that it need not have the formality and particularity of an indictment. United States v. Uhl, 211 Fed. 628, 128 C. C. A. 560; United States v. Williams, 200 Fed. 538, 118 C. C. A. 632; Healy v. Backus, 221 Fed. 358, 137 C. C. A. 166; Ex parte Hamaguchi (C. C.) 161 Fed. 185; Siniscalchi v. Thomas, 195 Fed. 701, 115 C. C. A. 501; Toy Tong v. United States, 146 Fed. 343, 76 C. C. A. 621.

[4] It is to be observed, also, that this being a habeas corpus proceeding, section 761 of the Revised Statutes (Comp. St. § 1289) requires the court, justice, or judge granting the writ "to dispose of the party as law and justice require," which means as law and justice require at the time of the hearing. Iasigi v. Van de Carr, 166 U. S. 391, 17 Sup. Ct. 595, 41 L. Ed. 1045; Motherwell v. United States, 107 Fed. 437, 48 C. C. A. 97. In Nishimura Ekiu v. United States, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146, the court said:

"A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment."

[5] The appellant contends that the hearing before the immigration inspector was unfair, in that he was not represented by an attorney nor informed of his right to counsel until three-fifths of the testimony had been taken. This does not render the hearing unfair. In Low Wah Suey v. Backus, 225 U. S. 460, 32 Sup. Ct. 734, 56 L. Ed. 1165, it was held that the preliminary examination of an alien without counsel is permitted, and that it is sufficient if at subsequent stages the alien has counsel. That case was followed by this court in Mok Nuey Tau v. White, 244 Fed. 742, 137 C. C. A. 190. The appellant, on being told that he was entitled to counsel to represent him, stated that he did not desire to avail himself of the privilege.

[6] It is said that the hearing was unfair, in that the record which was sent from the Department of Labor in answer to the writ contains ten letters and one newspaper clipping which were on file in the department, and which had been introduced ex parte and without the appellant's knowledge, and the appellant cites the decision of this court in Chew Hoy Quong v. White, 249 Fed. 869, 162 C. C. A. 103, in which the hearing on an application of an alien for admission into the United States was held unfair for the reason that the decision was based in whole or in part on confidential communications received by the immigration officers, the source, motive, or contents of which were not disclosed to the applicant or his counsel, and no opportunity was offered to cross-examine or to present testimony in rebuttal thereof. The appellant's case does not come within that ruling. It is clear that the order for his deportation was not based upon anything contained in the letters, and there is nothing in them tending to sustain the charge on which the appellant was arrested or ordered to be deported, and in fact those papers are not properly a part of the record.

Nine of the letters consisted of correspondence which the appellant had with fellow workers of the I. W. W. after his arrest and while he was in jail. One of the letters was a communication from the Department of Justice to the Commissioner General of Immigration, and is no part of the evidence upon which the report of the inspector at Portland was based, and it has no proper place in the record. It contains the erroneous statement that in 1917 the appellant had been arrested in Idaho on a charge of criminal syndicalism, and had been convicted, and imprisoned in the Idaho state penitentiary; whereas, in fact, the appellant had been acquitted of that charge. But the memorandum of the Commissioner General of Immigration contains the statement that the department knew that the appellant had been acquitted of the charge of criminal syndicalism in Idaho, and the decision of the Commissioner General shows by its terms that the judgment of deportation was based wholly upon the activities of the appellant in the various offices which he held in the I. W. W., and his distribution of literature which advocated the doctrine of sabotage, or the unlawful destruction of property.

The newspaper clipping, originally found in the appellant's possession, contains a list of men in Benewah county, Idaho, "known as aliens, or alien enemies, who have either revoked their first papers or who have claimed exemption from military service on the ground that

they were aliens," and in the list is the name of the appellant. The appellant could not have been injured by anything contained in the clipping. He admitted that he was an alien, and that as such he had claimed exemption from military service. In Tang Tun v. Edsell, 223 U. S. 673, 681, 32 Sup. Ct. 359, 363 (56 L. Ed. 606) the court, answering the contention that certain papers in addition to the record on the hearing had been forwarded to the Secretary on the appeal, said:

"The contents of these papers are not printed in the transcript of record, but we must assume from the description that they were from the official files. Of these the Secretary might at all times take cognizance, and it would be extraordinary, indeed, to impute bad faith or improper conduct to the executive officers because they examined the records, or acquainted themselves with former official action."

In re Jem Yuen (D. C.) 188 Fed. 350, it was contended that the hearing on the appeal was unfair because of alleged improper additions made to the record submitted to the Secretary. The court said:

"As to the hearing at Boston there is no complaint that the applicant was in any way hindered in submitting such evidence as he desired, or of any refusal to hear what was submitted. * * * It is well settled that officers of the government, to whom the determination of questions of this kind is intrusted under statutes like those governing these proceedings, are not bound by the rules of criminal procedure, nor by rules of evidence applied in courts. It is not enough for a review of their decision on habeas corpus that there was no sworn testimony, or no record of the testimony or of the decision. * * * I am unable to believe that the duty of the officers to give a fair hearing required them to shut their eyes to the contents of this former record, or to do so without formal or independent proof of its contents."

It is contended that the order of deportation is void, for the reason that there is no evidence in the record to sustain it. It is true that the appellant testified that he did not advocate, nor to the best of his knowledge did the organization to which he belonged advocate, the unlawful destruction of property in any way whatsoever, and said:

"I do not believe in sabotage, whether as a weapon used by the working class or used against them."

But it appears without dispute that in his connection with the organization to which he belonged he had been actively engaged in distributing to others the literature published and issued under the sanction of that organization. In that literature are to be found expressions directly and unmistakably inculcating the unlawful destruction of property. It was on the nature of that literature and the appellant's activities in disseminating the same that the order of deportation was based. It is not our province to weigh the testimony. We can go no further than to determine whether or not the officers to whom is intrusted the enforcement of the law have in this instance abused the discretion which was placed in them. We find no abuse of discretion, nor absence of evidence to sustain the order which is appealed from.

The order is affirmed.