## In re KOSOPUD et al.

(District Court, N. D. Ohio, E. D. June 12, 1920.)

No. 10419.

1. **Habeas corpus** ⊜⟾51—**Joint petition improper.**
    Joint petition of persons detained by an immigration inspector was improper, as no one of them had any interest in the illegal restraint of the other.

2. **Aliens** ⊜⟾40—**Constitutional law** ⊜⟾255—**Deportation of alien in the country in violation of law not deprivation of liberty without due process.**
    The deportation of an alien who is found in the country in violation of law (Act Feb. 5, 1917, § 19, as amended by Act Oct. 16, 1918 [Comp. St. Ann. Supp. 1919, § 4289¼b(1)]), or of the conditions prescribed by Congress, either as to his right to be admitted or his right to remain, is not a deprivation of liberty without due process of law.

3. **Aliens** ⊜⟾54—**Deportation order of immigration officials conclusive unless manifestly unfair or abuse of discretion.**
    Any alien complaining in court of proceedings for deportation or a deportation order must show that the officers conducting the proceedings were guilty of manifest unfairness or abused the discretion committed to them; otherwise the order of such executive officers, within the authority conferred by statute, is final and conclusive.

⊜⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. **Aliens ☞54—Courts will not weigh evidence upon which immigration officers acted.**

The courts will not weigh the evidence upon which executive officers acted, so that, if there is any evidence substantially tending to support the ground upon which the order of deportation is based, the finding of such executive officers upon the evidence must be accepted as conclusive and binding upon the courts.

5. **Habeas corpus ☞53—Inability to give bail not ground for writ.**

That petitioners, aliens ordered deported, are restrained of their liberty because of their inability to give bail while awaiting deportation, does not render their detention an illegal restraint of their liberty authorizing relief by habeas corpus.

6. **Habeas corpus ☞97—Right to writ depends upon illegality of present detention, not illegality of original arrest or commitment.**

The right to habeas corpus depends upon the present illegal detention of petitioners, not their original illegal arrest or commitment, and if their present detention is legal, irregularities or even illegalities in their original arrest and commitment cannot be redressed by habeas corpus, but only in a different kind of proceeding, namely, an action for false arrest or false imprisonment.

7. **Arrest ☞65—Arrest not illegal because arresting officer did not have warrant in possession.**

Where warrant of arrest has been issued and instructions to act thereon have been received by the arresting officer, his arrest of the person named in the warrant is not unlawful because the arresting officer, at the time of arrest, does not have the warrant in his physical possession.

8. **Aliens ☞54—Arresting officer may examine alien arrested, and latter's voluntary statements admissible against him; "involuntary statement."**

An arresting officer may lawfully interrogate or examine the alien arrested with respect to the charge made against him, even though the alien is not then represented by counsel and is under arrest, and has not been warned that his statement may be used against him, and whether his statements thus made may be given in evidence against him depends on their voluntary character, which is presumed, and they will be held "involuntary" only when shown to have been induced by threat, promise, or encouragement of hope or favor.

9. **Searches and seizures ☞7—Inadmissibility of evidence seized in violation of unreasonable search and seizure provision must be raised by objection.**

To make available the constitutional provision that unreasonable searches and seizures without warrant render inadmissible evidence thus seized, an objection should be interposed.

10. **Aliens ☞54—Rule as to right to counsel stated.**

As to the right of aliens in deportation proceeding to have benefit of counsel, the absence of counsel when they were being interrogated by the arresting officers is immaterial, nor does it make a hearing before an immigration inspector unfair or subject to review that the alien may not have had the benefit of counsel at the beginning of the proceeding; but it is sufficient if, during the hearing, he is advised of his rights and accorded counsel, and no part of the evidence previously taken or used against him is concealed or withheld from his counsel, and he is not thereby deprived of the privilege of bringing forward any explanatory or rebutting evidence.

Application of Lem Kosopud and others for writ of habeas corpus. Rule to show cause discharged, and petition dismissed.

Geo. Edwards, of Youngstown, Ohio, for petitioners.

E. S. Werts, U. S. Atty., and Richard S. Douglas, Asst. U. S. Atty., of Cleveland, Ohio, for respondents.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WESTENHAVER, District Judge. The petitioners presented a joint application for writ of habeas corpus alleging·that they are imprisoned and detained in the county jail of Mahoning county, within this district; that they are thus detained by one J. A. Fluckey, immigration inspector having charge of this district, without authority of law; that they are not charged with the commission of any crime, and are lawfully within the United States; that they were committed to jail without mittimus or other form of legal process or authority, and have been denied their constitutional right to a speedy and fair trial. Upon the filing of this petition, a rule was issued against Benjamin Morris, sheriff of Mahoning county, and J. A. Fluckey, immigration inspector, ordering them to appear and show cause why an alternative writ of habeas corpus should not issue. In response thereto, they have each filed a return showing the causes of the detention of the petitioners.

[1] Obviously these petitioners could not properly file a joint petition, as no one has any interest in the illegal restraint of the other. Moreover, the allegations of the petition are so general that a demurrer thereto might lie. Inasmuch, however, as the·respondents have not objected to the misjoinder nor demurred·to the petition, I have not felt called upon to take notice of these insufficiencies, but have proceeded to hear the case fully upon the ʼevidence, and will now dispose of it upon the merits. The return shows, and the fact is, that Lem Kosopud (also called Sam Kosaput) Alexander Bunda, John Borsokov, and George Androsh, had been discharged, and the warrants of arrest as to them had been canceled previous to the making of the return. The return also shows that Rade Marjanovich and Peter Stefanovich had been released on bail or personal recognizance before the making of the return, and the fact is that the warrants of arrest have heretofore been canceled as to them. Hence no further notice will be taken of their applications.

The return shown, as a reason for the detention of the remaining petitioners, that warrants had been issued against them by the Secretary of Labor, charging that tney were aliens, and that they had been found in the United States in violation of the Immigration Act of February 5, 1917, as amended October 16, 1918 (Comp. St. Ann. Supp. 1919, §§ 4289¼b[1]–4289¼b[3]). The particular violation of this act charged against each of them is as follows:

"That he is a member of or affiliated with an organization that·entertains a belief in the overthrow by force or violence of the government of the United States; that he is a member of or affiliated with an organization that advocates the overthrow by force or violence of all forms of law; that he is a member of or affiliated with an organization that advocates the overthrow by force or violence of the government of the United States; that he is a member of or affiliated with an organization that teaches the overthrow by force or violence of the government of the United States; that he is a member of or affiliated with an organization that teaches opposition to all organized government; and that he is a member of or affiliated with an organization that entertains opposition to all organized government."

Each and all of them, prior to the hearing before me, had been given hearings before the immigration inspector, and the Secretary of Labor, upon the basis of such hearings and the evidence then taken, had

found the charges contained in the warrants to be sustained, and had made a deportation order as to all of them except Mike Hladysh. Since the hearing a final decision has also been made in his case and a deportation order has been issued. The warrants of arrest, the whole proceedings in the hearing before the immigration inspector, and the orders of deportation, have all been exhibited and introduced in evidence. This documentary evidence, together with all the oral evidence introduced on this hearing, have been given careful consideration.

The provisions of section 19, Act of February 5, 1917, as amended by act approved October 16, 1918 (Comp. St. Ann. Supp. 1919, § 4289¼b[1]), under which petitioners were arrested, is as follows:

"That aliens who are anarchists; aliens who believe in or advocate the overthrow by force or violence of the government of the United States or of all forms of law; aliens who disbelieve in or are opposed to all organized government; aliens who advocate or teach the assassination of public officials; aliens who advocate or teach the unlawful destruction of property; aliens who are members of or affiliated with any organization that entertains a belief in, teaches, or advocates the overthrow by force or violence of the government of the United States or of all forms of law, or that entertains or teaches disbelief in or opposition to all organized government, or that advocates the duty, necessity, or propriety of the unlawful assaulting or killing of any officer or officers, either of specific individuals or of officers generally, of the government of the United States or of any other organized government, because of his or their official character, or that advocates or teaches the unlawful destruction of property shall be excluded from admission into the United States."

These acts further provide that any alien found within the United States, no matter when he may have entered, who is at the time of his arrest or hearing within the terms of this act as above quoted, may be arrested, and, if upon hearing found guilty, may be deported. His arrest shall be made upon a warrant issued by the Secretary of Labor. His hearing shall be had before an immigration inspector. The order of deportation is to be made by the Secretary of Labor upon the basis of the evidence taken, and the recommendation, if any, made by the immigration inspector before whom the hearing is had. General rules and regulations have been made under authority of this act for the administration of all the laws relating to the deportation of aliens.

[2-4] The right of aliens to be admitted to the United States or to remain here, and the proceedings for their arrest, hearing, and deportation, have been considered by the courts, and the law relating thereto is no longer open to question. It has been settled by repeated decisions that Congress has power to exclude any and all aliens from the United States; to prescribe the terms and conditions on which they may come in or on which they may remain after having been admitted; to establish the regulations for deporting such aliens as have entered in violation of law, or who are here in violation of law; and to commit the enforcing of such laws and regulations to executive officers. The deportation of an alien who is thus found here in violation of law, or of the conditions prescribed by Congress either as to his right to be admitted or his right to remain, is not a deprivation of liberty without due process of law. It is further settled that a hearing on such proceedings for deporting aliens by the executive officers to whom is committed the

administration of the immigration laws may be made conclusive when fairly conducted. Any alien complaining of such proceedings or a deportation order in court must show that the officers conducting them were guilty of manifest unfairness or abused the discretion committed to them, otherwise the order of such executive officers, within the authority conferred by statute, is final and conclusive. It is further settled that the courts will not weigh the evidence upon which executive officers acted, so that if there is any evidence substantially tending to support the ground upon which the order of deportation is based, the finding of such executive officers upon the evidence must be accepted as conclusive and binding upon the courts. Of the numerous authorities supporting these rules, it will be sufficient to cite the following: Turner v. Williams, 194 U. S. 279, 24 Sup. Ct. 719, 48 L. Ed. 979; Low Wah Suey v. Backus, 225 U. S. 460, 32 Sup. Ct. 734, 56 L. Ed. 1165; Guiney v. Bonham (9 C. C. A.) 261 Fed. 582, 8 A. L. R. 1282. In the light of these rules of law, I have examined the warrants, the proceedings before the immigration inspector, the evidence then taken, and the orders of deportation made by the Secretary of Labor. These warrants appear to have been regularly issued and fully inform the petitioners of the grounds upon which it was asserted that they were unlawfully within the United States. The orders of deportation are regular and in the usual form. The proceedings before the immigration inspector appear to have been in all respects regular and contain evidence tending to support some one or another of the grounds set forth in the warrants. It is unnecessary to review this evidence at length, especially as on the hearing before me it was not seriously contended that the charge made therein was not sustained by the evidence. It was as forceful and convincing as to some one or more of the grounds charged as was the evidence in other cases found in the reported cases upon which deportation orders were held to have been properly made. See Turner v. Williams, supra; Guiney v. Bonham, supra; Lopez v. Howe (9 C. C. A.) 259 Fed. 401, 170 C. C. A. 377; Ex parte Bernat (D. C.) 255 Fed. 429.

[5] Bail was not and has not been denied to any of the petitioners. The warrants for their arrest authorized each of them to be admitted to bail. No complaint is now made that bail is denied any of them. Complaint is made, however, that the deportation orders were made in some instances as early as March 18, 1920, and have not yet been executed, but that petitioners are restrained of their liberty because of their inability to give bail while awaiting deportation. Undoubtedly it is a hardship upon persons unable to give bail to keep them confined in jail because of the inability of the Department of Labor to execute more promptly its deportation order. I have given this aspect of the situation much thought, but while fully appreciating the hardship, I am not able to discover any basis, and none has been suggested in argument, upon which a finding can be made that these persons are by reason thereof illegally restrained of their liberty. I am compelled to agree with the conclusions reached by Circuit Judge Lacombe in Schlimm v. Howe (D. C.) 222 Fed. 96. In that case, an alien had in 1915 been

ordered deported to Germany, but the order could not be executed because of the absence of any ocean passenger service to German ports. In denying relief, he said:

"His continual detention was unfortunate, but certainly is not illegal. His present condition can be alleviated only by the action of the executive branch of the government. A federal court would not be justified in discharging him."

Other grounds more strongly urged in argument are the following: That the petitioners were originally arrested without warrant; that some, if not all, were immediately interrogated before obtaining counsel, with respect to the charges alleged in the warrants; that the answers then made were given in evidence against them in some if not all of the cases on the hearing before the immigration inspector; and that at the time of their arrest, membership cards in the Communist party and literature in their possession tending to support the charge made in the warrant were seized and afterwards introduced in evidence against them. The warrants in all except two cases were issued December 29, 1919. Telegraphic notice of the issuance of these warrants was given to special agents of the Department of Justice and arrests made January 2 or 3, 1920. At the time of such arrest, the formal written warrants were not in the possession of the arresting officers. It is also true that immediately thereafter some, if not all, of the petitioners were interrogated without the presence of any counsel representing them, and the statements then made were afterwards used in evidence, and that in some instances membership cards and other incriminating evidence found in their possession were seized and used. In the case of George Wowk, sometimes called Georgay Wolk, he was then confined in jail under a state sentence for violating a state law. The warrant in his case was not issued until January 17, and he was not surrendered to the federal authorities until April 5 following, when his state sentence had expired. In the case of George Warga, the warrant was not issued until February 8, but it does not appear that he was arrested until at a date several days thereafter.

[5, 7] The question of law here is as to the present illegal detention of the prisoners, not as to their original illegal arrest or commitment. If their present detention is legal, irregularities or even illegalities in their original arrest and commitment cannot be redressed in this proceeding, but only in a different kind of action, namely, an action for false arrest or false imprisonment. In Nishimura Ekiu v. United States, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146, which was also a deportation proceeding against an alien alleged to be in the United States in violation of law, Mr. Justice Gray, delivering the opinion, says:

"A writ of habeas corpus is not like an action to recover damages for unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." 142 U. S. 662, 12 Sup. Ct. 339, 35 L. Ed. 1146.

To the same effect, see Iasigi v. Van de Carr, 166 U. S. 391, 17 Sup. Ct. 595, 41 L. Ed. 1045; Guiney v. Bonham (9 C. C. A.) 261 Fed. 583, 8 L. R. A. 1282.

Nor is any sound reason suggested why the original arrest was unlawful because the arresting officer did not have in his physical possession the warrant of arrest. It had been issued, and instructions to act thereon had been received by the arresting officer. It would be a strong proposition in an ordinary felony case to say that a fugitive from justice for whom a capias or warrant was outstanding could not be apprehended until the apprehending officer had physical possession of the capias or the warrant. If such were the law, criminals could circulate fréely from one end of the land to the other, because they could always keep ahead of an officer with the warrant. The practice in such cases is precisely that which was followed in these cases.

[8] Nor do I perceive any good reason why the arresting officer may not lawfully interrogate or examine the person arrested with respect to the charge made against him, even though the alien is not then represented by counsel and is under arrest. This is the usual course in criminal proceedings. Whether his statements thus made may be given in evidence against him depends upon whether or not they were voluntary. They will be presumed to have been made voluntarily unless the contrary appears, and they will be held to be involuntary only when shown to have been induced by threat, promise, or encouragement of hope or favor. The absence of counsel, the fact that the prisoner may not have been warned that he was not required to make a statement or that, if he did, it might be used against him, or that he was under arrest and restraint, do not by themselves prevent the statements from being voluntary or make them incompetent as evidence. See Wilson v. United States, 162 U. S. 613, 16 Sup. Ct. 895, 40 L. Ed. 1090.

[9] No objection was made on the hearing before the immigration inspector or at any other time to the use of this testimony because it was not voluntary, or on any other ground. Likewise, as to the membership cards and incriminating literature seized at the time of their arrest, the petitioners on the hearings freely admitted the authenticity of the cards, their membership in the Communist party, familiarity with the contents of the incriminating literature, and in many, if not all, cases, a belief in the views therein contained. To make available the constitutional provision that unreasonable searches and seizures without warrant render inadmissible evidence thus seized, an objection should be interposed at some time or another. Whether if such an objection had been interposed on the hearing before the immigration inspector or before an order of deportation was made, these cards and this literature would be admissible, presents a question which does not arise upon the record, and as to which no opinion need be expressed.

Another objection much urged is that the petitioners did not have a fair hearing because they were not represented by counsel. As already stated, they did not have counsel when interrogated by the arresting officer. The immigration inspector, however, testified that all of them were advised during their hearings before him that they were entitled

to have the assistance of counsel in preparing their defense and in defending against any order of deportation. The proceedings show that the warrant was fully read and explained to each of them, and that they were advised of their right to counsel, and that each of them waived his right to counsel. A contrary contention is made as to one who is not a party to this petition. It seems that George Edwards, Esq., present counsel for the petitioners, was early in March employed by some officer or committee of the Communist party in Chicago to act as counsel for all members of the Communist party under arrest at Youngstown in Mahoning county. The hearings in the cases of the petitioners had then taken place, although as to some the Secretary of Labor had not yet acted and made a deportation order. It does not appear that the petitioners, or any one of them under arrest, requested the executive committee of the Communist party to employ counsel for them. Granting, however, that this employment made Mr. Edwards counsel for any one, or relieved him of the status of a pure volunteer, the evidence tends to show only that in the case in question he was refused admission to the jail until he gave the name of the particular prisoner that he wished to see. He was thereafter permitted to consult with that prisoner and also to appear for him at the hearing. Some charges and countercharges are made by him and the immigration inspector as to what took place upon that occasion, but inasmuch as all this relates to one who is not a petitioner, I deem it unnecessary to enter into the merits of that controversy.

[10] The only legal inquiry upon the foregoing facts is whether or not the petitioners were denied counsel in such a way as to deprive them of a fair hearing. Manifestly the absence of counsel when they were being interrogated by the arresting officers is immaterial. The situation in that respect is no different from that which exists in most cases of arrest on a criminal charge. The aid and assistance of counsel at or during the hearing before the immigration inspector, and before the order of deportation is made, is the privilege which the law accords to aliens charged with being unlawfully within the United States. Nor does it make a hearing before an immigration inspector unfair and subject to review because the alien may not have had the benefit of counsel at the beginning of those proceedings. It is sufficient if, during the hearing, he is advised of his rights or is accorded counsel, and no part of the evidence previously taken or used against him is concealed or withheld from his counsel and he is not thereby deprived of the privilege of bringing forward any explanatory or rebutting evidence. It was so held in the following cases: Low Wah Suey v. Backus, 225 U. S. 460, 471, 32 Sup. Ct. 734, 56 L. Ed. 1165; Mok Nuey Tau v. White (9 C. C. A.) 224 Fed. 743, 137 C. C. A. 190; Guiney v. Bonham (C. C. A.) 261 Fed. 582, 585, 8 A. L. R. 1282.

All of the specific objections urged on this hearing are covered by the foregoing observations. In addition thereto, it is said that some of the petitioners were at the time of their arrest, or during their examination by the arresting officers, insulted, abused, or physically mistreated. The evidence to this effect is so unsubstantial that I do not deem it necessary to comment thereon. Certainly nothing appears to indicate that

the petitioners, or any of them, did not have a fair hearing, or that the executive officers abused their discretion or took any advantage of the petitioners, or deprived them of any opportunity to make as full and complete a defense as desired. All of them who were called as witnesses said that they were informed by the inspector of their right to counsel and that this right had been waived.

Being of opinion that the petitioners are not now unlawfully restrained of their liberty, the rule to show cause will be discharged, and the petition will be dismissed, at the cost of the petitioners.