Jean Jules Pierre Henri FOUGHEROUSE,
also known as John J. Fougherouse,
Petitioner,

v.

Herbert BROWNELL, Jr., as Attorney General of the United States, Argyle McKay, as Commissioner of the Immigration and Naturalization Service, United States Department of Justice, Thomas G. Finucane as Chairman of the Board of Immigration Appeals, Office of the Attorney General, John D. Boyd as District Director Immigration and Naturalization Service, United States Department of Justice, Roy J. Norene, also known as R. J. Norene, as Officer in Charge, Immigration and Naturalization Service Office, United States Department of Justice, at Portland, Oregon, Louis C. Hafferman as Special Inquiry Officer, Immigration and Naturalization Service, United States Department of Justice, Respondents.

Jean Jules Pierre Henri FOUGHEROUSE,
also known as John J. Fougherouse,
Petitioner,

v.

John P. BOYD, District Director, Immigration and Naturalization Service, United States Department of Justice, Roy J. Norene, Officer in Charge, Immigration and Naturalization Service Office, United States Department of Justice, at Portland, Oregon, Respondents.

Civ. Nos. 7328, 7331.

United States District Court
D. Oregon.

Jan. 10, 1958.

582

Peterson, Pozzi & Lent, Portland, Or., for petitioner.

James Morrell, Asst. U. S. Atty., Portland, Or., for respondents.

EAST, District Judge.

### Statement of Facts and Status of Causes

Jean Jules Pierre Henri Fougherouse, also known as John J. Fougherouse, petitioner, an alien maintaining his residence in Oregon, was served with a warrant of arrest issued by the District Director of the Immigration and Naturalization Service, on October 18, 1951 [1] charging

---

1. The charge set out in the warrant reads: "Whereas, from evidence submitted to me, it appears that the alien (naming petitioner) who entered this country at Detroit, Michigan on the 13th day of May 1940 has been found in the United States in violation of the immigration laws thereof, and is subject to be taken into custody and deported pursuant to the following provisions of law, and for the following reasons, to-wit: The Act of October 16, 1918, as amended, in that he has been, after entry a member of the following class, set forth in Section of said Act: An alien who was a member of the communist party of the United States."

The text of the act referred to is found in 40 Stat. 1012 and provides for the deportation of any aliens who are or have been at any time after entry members of or affiliated with any organization that entertains a belief in, teaches, or advocates the overthrow by force or violence of the Government of the United States. This Act was amended in 1950 to provide for the deportation of aliens who are or have been at any time after entry members of or affiliated with the Communist Party of the United States. 64 Stat. 1006.

in effect that petitioner had been a member of the Communist Party of the United States, therefore subject to deportation. Petitioner was admitted to and is now on bail.

On April 8, 1953, petitioner received a notice of hearing of the warrant of arrest,[2] following which a hearing was held before a special Inquiry Officer of the Service during the months of May and June of 1953.[3] At this hearing the petitioner was represented by retained counsel. At the conclusion of the government's case the examining officer lodged an additional charge under Sec. 241 of the Immigration and Nationality Act of 1952, 66 Stat. 163, Title 8 U.S.C.A. Sec. 1251 (1953 ed.). This additional charge was identical in all respects to the charge theretofore made under the prior Act. Upon conclusion of the hearing, the Special Inquiry Officer made and entered findings of fact, conclusions of law and ordered that the petitioner be deported.[4] Petitioner's trial appeal to the Board of Immigration Appeals was dismissed, thereafter his application for reconsideration and his motion to reopen were dismissed. Petitioner has instituted two causes before this Court, the first, No. 7328, being his petition for injunctive relief and a declaratory judgment. Civil No. 7331, being petitioner's petition for writ of habeas corpus directed against the Director, instituted on the day he was actually surrendered to the Immigration Service by his bondsman. By stipulation of the parties, with consent of the Court,

2. "You are charged with being an alien illegally in the United States and subject to deportation upon the following grounds: The Act of October 16, 1918, as amended, in that you have been, after entry, a member of the following class, set forth in Section I of said Act: An alien who was a member of the Communist Party of the United States."

3. The hearing was conducted pursuant to Sec. 242 of the Immigration and Nationality Act of 1952, and the regulations promulgated thereunder. 66 Stat. 208, Title 8 U.S.C.A. Sec. 1252 (ed. 1953).

4. "Findings of Fact: Upon the basis of all the evidence presented, it is found:
"(1) That the respondent is an alien, a native of Tahiti and citizen or subject of France;
"(2) That the respondent entered the United States at San Francisco, California, on August 9, 1924, as a seaman on the S.S. Maunganui;
"(3) That the respondent at the time of such entry was admitted temporarily for shore leave only but has continued to thereafter maintain his residence in the United States;
"(4) That the respondent was made the subject of deportation proceedings on November 18, 1938, for the reason that he had not been admitted into the United States for permanent residence as an alien;
"(5) That the respondent as the result of such proceedings was accorded the privilege of pre-examination and voluntary departure so that he could adjust his status to that of a permanent resident by obtaining an immigration visa at an American Consulate in Canada;
"(6) That the respondent did proceed to Canada and last entered the United States for permanent residence at Detroit, Michigan, on May 13, 1940;
"(7) That the respondent after entry into the United States in 1924 became a voluntary member of the Communist Party of the United States in about 1936 and continued his membership therein until at least sometime in 1938 or 1939.
"Conclusions of Law: Upon the basis of the foregoing findings of fact, it is concluded:
"(1) That under the Act of October 16, 1918, as amended, the respondent is subject to deportation on the ground that he was, after entry, a member of the following class, set forth in Section 1 of said Act: An alien who was a member of the Communist Party of the United States;
"(2) That under the Immigration and Nationality Act, the respondent is subject to deportation on the ground that he has been, after entry, a member of the following class, set forth in Section 241(a) of said Act: An alien who was a member of the Communist Party of the United States.
"Order: It is ordered that the alien be deported from the United States in the manner provided by law on the following charge:
"The Immigration and Nationality Act, in that he has been, after entry, a member of the following class, set forth in Section 241(a) of said Act: An alien who was a member of the Communist Party of the United States."

the two causes have been consolidated for hearing and determination.

## Scope of Judicial Review

 Upon a collateral review in habeas corpus it is enough that there was some evidence from which the findings and conclusion of the administrative tribunal could be deduced and that no error was committed so flagrant as to convince the Court of the essential unfairness of the trial. United States ex rel. Harisiades v. Shaughnessy, 2 Cir., 1951, 187 F.2d 137, 141, affirmed Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586. Review by way of declaratory judgment under Sec. 10 of the Administrative Procedure Act imposes upon the District Court the duty to hold unlawful and set aside agency action, findings, and conclusions found to be unsupported by substantial evidence. 60 Stat. 243, 5 U.S. C.A. § 1009 (Cum.Supp.1950). It is now settled that in a deportation proceeding, whether habeas corpus or declaratory judgment is sought, the scope of judicial function is the same. Cruz-Sanchez v. Robinson, D.C.Cal.1955, 136 F.Supp. 52; United States ex rel. Brzovich v. Holton, 7 Cir., 1955, 222 F.2d 840. It follows, therefore, that in order to sustain the order of deportation herein involved, this Court must find from a review of the entire record made before the Service that the order is supported by substantial evidence and is not arbitrary, capricious, or an abuse of discretion, nor contrary to the Constitution, nor without observance of proper procedure. Title 5 U.S.C.A. Sec. 1009(e).

## Adequacy of Hearing before Service

Petitioner challenges in several respects the procedure adopted by the Immigration Service at the hearing before its Special Inquiry Officer.

### Challenged Notice of Charges

 Notice required under the Act is a reasonable notice, under all the circumstances, of the nature of the charges against him. It will be noted that the warrant served upon petitioner on October 18, 1951, specifies that the petitioner entered the country in May of 1940. The formal notice of hearing sent to petitioner some 18 months later reiterates the charge contained in the warrant without specifying an entry date. Petitioner was given over a month to prepare for the hearing after receiving formal notice, and had over 19 months actual notice of the nature of the charge. Certainly as to time, petitioner had reasonable notice. Petitioner's complaint regarding notice as to the nature of the charge deserves more comment. Reading the formal notice alone, it obviously notifies petitioner to stand ready to meet proof of his membership in the Communist Party at any time after his entry into the United States. However, the language of the warrant of arrest apparently indicates that petitioner is to be charged with being a member of the Party at some time subsequent to May, 1940, that being the date of entry specified upon the warrant. In fact, the petitioner originally entered this country in 1924 as an alien seaman and remained continuously within this country, with the exception of intermittent voyages aboard American vessels, until 1939, at which time, pursuant to deportation proceedings, it was determined petitioner should voluntarily leave this country and apply for an Immigration Visa for permanent residence. Petitioner evidently traveled voluntarily to Canada in 1940 and was issued a quota visa at Windsor, Ontario, later in that same year, and thereupon entered this country at Detroit, Michigan, as a lawful permanent resident. At the hearing it developed that the government was relying upon proof of petitioner's membership in the Communist Party during the years 1936 through 1938, during which time he had been residing in this country unlawfully as a result of overstaying his entry in 1924 as an alien seaman. It is thus apparent that petitioner's first entry occurred in 1924, sans visa, followed by a subsequent entry in 1940 via visa. The Board of Immigration Appeals has determined, in a case involving essentially these same facts, that either entry is a

sufficient foundation upon which to lay a charge of Communist membership after entry. See In the Matter of C., 4 I. and N. Dec. 596 (1953). This construction of the Act of 1918 as amended appears to be a reasonable and proper interpretation of the statute and will not be disturbed by this Court. Furthermore, this construction is in no way affected by the subsequent enactment of the Immigration and Nationality Act which provides, inter alia, that any alien in the United States (including an alien crewman), shall, upon the order of the Attorney General, be deported who is or at any time has been, after entry, a member of any of the following classes of aliens: Aliens who are members of or affiliated with the Communist Party of the United States. Title 8 U.S.C.A. Sec. 1251(a)(6)(C) (ed. 1953). Therefore, petitioner's first voluntary entry as an alien seaman is an "entry" within the meaning of either Act, and petitioner is subject to deportation under either charge if his Communist Party membership is determined upon reasonable, substantial, and probative evidence. There existing no inherent defect in the charges, the question remains whether or not petitioner was given notice of the nature of the charges upon receipt of the warrant and notice, so as to adequately prepare for the hearing. A warrant for arrest need not have the formality and particularity of an indictment, but must contain sufficient information to enable the alien to offer testimony in refutation of the charge. Podolski v. Baird, D.C.Mich. 1950, 94 F.Supp. 294. In the instant case the specification in the warrant as to petitioner's entry is merely a matter of descriptio personae and does not constitute a portion of the charge proper. This is fully demonstrated by the fact that the formal notice of hearing sent to the petitioner makes no reference to a specific date of entry. As between the warrant and formal notice of hearing, the latter must be deemed controlling. Certainly

petitioner was aware of his original entry in the year 1924, a careful reading of the charge as contained in the notice would indicate that petitioner might expect to be charged with membership at any time thereafter, up to and including the date of the hearing. While the Immigration Service might be charged with loose preparation of jurisdictional papers, it cannot be said that petitioner did not receive reasonable notice of the nature of the charges against him.

### Challenged Second Charge

Petitioner also alleges that he was not given proper notice as to the second charge, as such charge was filed for the first time at the conclusion of the government's case-in-chief. The second charge was identical to the first charge, the only reason for it being entered being that the second charge was made under the Immigration and Nationality Act of 1952, which had been enacted after the warrant and notice were served but prior to the time of hearing. This contention has been foreclosed by the decision in Guiney v. Bonham, 9 Cir., 1919, 261 F. 582, 8 A.L.R. 1282.[5]

### Challenged Denial of Bill of Particulars

Petitioner complains of a denial by the Special Inquiry Officer of a motion for a bill of particulars, made at the commencement of the hearing. No provision for such a bill is to be found in the statutes or regulations, hence, it would appear that such a matter is left to the discretion of the Inquiry Officer. No abuse of that discretion has been shown in the record which would enable this Court to intervene in the affairs of the executive branch. Petitioner need not be apprised of the government's evidence against him before commencement of the deportation hearing. This procedural requirement was met during the hearing, where petitioner, represented by able counsel, was confronted with all the evidence upon which the government based its charges. United States ex rel.

5. "Although a warrant of arrest for deportation is in terms based on a particular statute, the alien may be deported under a later statute, which under the facts charged is applicable."

Circella v. Neely, D.C.Ill.1953, 115 F. Supp. 615, 623, affirmed 1954, 216 F.2d 33, certiorari denied 348 U.S. 964, 75 S.Ct. 525, 99 L.Ed. 752.

Petitioner asserts error in the conduct of the Inquiry Officer in the following respects: (1) That irrelevant and immaterial evidence was not excluded from the record; (2) that right of effective cross-examination of government witnesses was not permitted; (3) that evidence presented by certain of petitioner's witnesses was erroneously held to be incompetent; (4) that the hearing was not fair and impartial; (5) that the written summary of the evidence, prepared by the Inquiry Officer, was improper and showed bias; (6) that the decision of the Inquiry Officer was not based upon reasonable, substantial, and probative evidence; and (7) that petitioner was not represented by counsel of his own choice.

This Court has reviewed the entire record,[6] and it is apparent that none of the above alleged errors are substantiated by the record. In light of the history of these causes, a review, herein, of the testimony would be pointless and unnecessary, because this Court finds itself in substantial agreement with the opinion of the Board.

It is difficult to imagine how the cross-examination of the government witnesses could have been any more extensive, and its lack of effectiveness, if any, is certainly not attributable to any conduct on the part of the Inquiry Officer. For the purpose of impeachment and testing of memory, counsel was allowed almost unlimited latitude in his cross-examination, and certainly his cross-examination was far more repetitious than would be allowed in a court of law. Indeed, the record is composed of an abundance of irrelevant testimony, but by far the most of this is attributable to petitioner's cross-examination of government witnesses and direct examination of his own. There was considerable hearsay offered by both parties, and many of petitioner's witnesses who testified as to reputation were shown to have little or no acquaintance with the reputation of the petitioner in the community wherein he resided unless the word "community" is construed to encompass the entire city of Portland, Oregon. However, this testimony was properly admitted for what it was worth. Navarrette-Navarrette v. Landon, 9 Cir., 1955, 223 F.2d 234, certiorari denied 351 U.S. 911, 76 S.Ct. 700, 100 L.Ed. 1444. The Inquiry Officer is not bound by the strict rules of evidence which apply in judicial proceedings, and no prejudicial abuse in the admission of evidence so as to characterize the hearing as unfair is shown in the record. Hyun v. Landon, 9 Cir., 1955, 219 F.2d 404; Navarrette-Navarrette v. Landon, supra. It is appropriate to mention at this point that the several copies of the "Labor Newdealer" and "C.I.O. Industrial Worker" which were admitted at the hearing have not been considered by this Court in arriving at a decision. This type of evidence has been held relevant, United States ex rel. Vajtauer v. Commissioner of Immigration, 1926, 273 U.S. 103, 47 S.Ct. 302, 71 L.Ed. 560, and it is not the intention of this Court to lay down any rules of evidence by which the Service must abide, in the future. It merely appears that on the instant record, the government has not sufficiently shown any connection between the petitioner and the matter appearing in the newspapers, with the exception, of course, of those articles carrying his name on the byline. In these latter articles, nothing appears that would remotely establish his membership in the Communist Party, hence they were also irrelevant.

No bias is shown in favor of the government in the summary of evidence prepared by the Inquiry Officer, and in any event this Court is not bound

---

6. The transcript itself contains 834 typewritten sheets exclusive of transcripts of prior hearings and a deposition. The Inquiry Officer's summary is 39 sheets, followed by a 10-page opinion of the Board. There are motions, briefs and extensive exhibits, to say nothing of the exhaustive briefs and pleadings filed with this Court.

by such a summary, as this review is of the entire record and transcript of the hearing. Petitioner's contention that he was not represented by counsel of his choice borders on frivolity. He was adequately represented by one of the leading members of the local bar who has had many years of experience and was more than adequately qualified to undertake this defense, as is demonstrated by the comprehensive nature of the petitions before this Court.[7]

In its entirety, the hearing was fair and impartial and there is not the slightest indication from the record that petitioner was not afforded due process of the law throughout his entire dealing with the Immigration Service.

 It also appears beyond question that petitioner's membership in the Communist Party during the years 1936 through 1938 has been established by reasonable, substantial, and probative evidence. The burden of proof on this issue was upon the government and it has been carried. The government's case rests upon the testimony of four admitted ex-Communist Party members, all of whom testified to having attended closed Communist Party meetings with petitioner, either in San Francisco or Portland, one of these meetings involving disciplinary action being taken by the Party against one Wilmont. Wilmont testified that petitioner was in attendance at that meeting as a member of the local Control Committee of the Party. It appears from the testimony of all four of the government's witnesses that petitioner occupied a position of at least local Party leadership within the waterfront Union section. Petitioner centers his present attack upon the ground that only sporadic attendance at Party meetings has been testified to; that in fact one of these meetings was a Union meeting rather than a Party meeting, and that none of the government's witnesses are worthy of belief. Much is made of witness Wilmont's drinking habits. So much, in fact, that it seems necessary to point out that although witnesses for both parties testified that Wilmont became grossly intoxicated on numerous occasions, still this fact alone does not necessarily render his testimony unworthy of belief. Much is also made of the character of a certain meeting at the Lennox Hotel in Portland during 1938, as to whether it was a closed Party meeting or not. A not unreasonable conclu-

---

7. "Q. Who is your attorney? A. Mr. Nels Peterson.

"Special Inquiry Officer to Mr. Peterson:

"Q. Please identify yourself for the record. A. My name is Nels Peterson. My office is 413 Equitable Building, Portland, Oregon. I am practicing law in the State of Oregon, Federal District Court for the District of Oregon, Circuit Court of Appeals for the Ninth Circuit.

"Q. Have you been admitted to practice before the Board of Immigration Appeals and the Service? A. I have.

"By Special Inquiry Officer:

"Notice of Appearance on Form G–28, signed by Nels Peterson, has been filed in this case today.

"By Mr. Peterson:

"May the record show, Mr. Hafferman, that I am associated, or I have asked to be associated with Mr. Irvin Goodman, who appeared as Mr. Fougerouse's counsel and on whose behalf a continuance was previously asked because of his engagement in a trial of a criminal action in Seattle, Washington, in which he has been engaged since April 15 and is now so engaged.

"Special Inquiry Officer to Examining Officer:

"Q. Has Mr. Goodman, Mr. Fenn, filed a Notice of Appearance on Form G–28, according to the file which you have before you? A. It is my understanding that he has. I can't locate the Notice of Appearance. It apparently was filed. I know that Mr. Goodman has been Mr. Fougerouse's representative at the time of his arrest.

"Special Inquiry Officer to Mr. Peterson:

"Q. Do you wish to have the record show, then, that Mr. Goodman will be associated with you in this matter? A. I wish the record to show that Mr. Goodman appeared initially as the attorney for Mr. Fougerouse on his arrest and upon subsequent proceedings in this matter and that Peterson and Pozzi are associated with the law firm of Goodman and Levenson in representing the case."

sion to be drawn from the record is that the Lennox Hotel was the situs of several meetings during the year 1938, that some or at least one of these meetings was a closed Communist meeting, and some were informal meetings of various Union members and leaders to discuss Union activity.

Petitioner has not explained or refuted, except by his denials, Wilmont's testimony that he attended a closed Communist meeting in a private residence in Portland, at which petitioner was also present, nor Handelsman's testimony that he attended at least six closed meetings with petitioner in San Francisco during the years in question. There is also abundant circumstantial evidence pointing towards petitioner's membership in the Communist Party, and such evidence need not be disregarded. Petitioner took the stand and denied that he had ever been a member of the Party, yet this Court cannot say the Immigration Service erred in resolving this conflict against petitioner, especially in the light of his obvious interest and admission of record that he had perjured himself at a prior hearing before the Service regarding the length of continuous residence in this country, and occurrences of voyages to foreign countries.

 A further point is made that the Special Inquiry Officer failed to show affirmatively during the hearing that he had not participated in the investigation of petitioner prior to the hearing. Immigration and Nationality Act 1952, 8 U.S.C.A. § 1252(b). Cf. Wong Yang Sung v. McGrath, 1949, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616. When this matter was brought to the attention of the Inquiry Officer, he indicated of record that he had not so participated, absent further showing to the contrary, his word will be accepted as a true statement. No statute or regulation is cited, and none has been found, requiring an Inquiry Officer to make an affirmative showing of non-participation, but in any event the present procedure was sufficient under the circumstances. Procedural irregularities must be prejudicial to justify judicial in-

tervention. Couto v. Shaughnessy, 2 Cir., 1955, 218 F.2d 758, certiorari denied 349 U.S. 952, 75 S.Ct. 879, 99 L.Ed. 1276. Cf. Sumio Madokoro v. Del Guercio, 9 Cir., 1947, 160 F.2d 164, 167, certiorari denied 332 U.S. 764, 68 S.Ct. 68, 92 L.Ed. 349.

### Constitutional Issues

Petitioner attacks the constitutionality of both the Act of 1918 as amended and the Act of 1952, insofar as they make membership in the Communist Party, per se, grounds for deportation of an alien. Such statutes are said to abridge the right of freedom of speech of aliens, and also as applied to petitioner herein, they are either ex post facto or bills of attainder, or both. The proof adduced at the hearing indicated that petitioner was a member of the Communist Party until 1938, but nowhere is it alleged or proved that at any time after 1940 was petitioner a member. The 1950 amendment of the Act of 1918 was the first time that membership per se was made grounds for deportation, hence petitioner's contention is that this legislation constitutes ex post facto legislation or is a bill of attainder. Of course, this same position is occupied by the Act of 1952, which carries over the membership per se clause of the 1950 amendment.

 Deportation, however severe its consequences, has been consistently classified as a civil rather than a criminal procedure. Harisiades v. Shaughnessy, supra. Petitioner's free-speech contention has also been settled adversely to him in Galvan v. Press, 1954, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911.

 A bill of attainder is a legislative act which inflicts punishment without a judicial trial, United States v. Lovett, 1946, 328 U.S. 303. Congress has the power to order the deportation of aliens whose presence in the country it deems hurtful. Carlson v. Landon, 1952, 342 U.S. 524, 536, 72 S.Ct. 525, 96 L.Ed. 547. Deportation of aliens has never been considered punishment either in the criminal or civil sense, it is merely a refusal of the government to harbor persons whom it does not want. Bugajewitz

v. Adams, 1913, 228 U.S. 585, 33 S.Ct. 607, 57 L.Ed. 978. Therefore, deportation is largely a political matter relegated to the executive and legislative branches of government.[8]

## Court's Determination

Petitioner makes no contention, nor does the record indicate, that petitioner's membership in the Communist Party lacked the kind of meaningful association so as to place him under the protection of the exceptions made in Rowoldt v. Perfetto, 355 U.S. 115, 78 S.Ct. 180, 2 L.Ed. 2d 140. Quite on the contrary, the record shows that petitioner was fully aware of the means, aims and ideals of the Communist Party as being dedicated to the overthrow of the government of the United States of America by force during the period of his membership during which he acted as a leader of the Party on at least the local level.

The Court is of the opinion that petitioner's complaint and his cause No. 7328 should each be dismissed and, further, that petitioner's petition for a writ of habeas corpus and his cause No. 7331 should be denied and dismissed, respectively.

The order of the Board aforesaid should be affirmed. Counsel for the defendants in the respective causes are requested to submit appropriate orders.

---

8. "* * * any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 588, 72 S.Ct. 512, 519, 96 L.Ed. 586. Furthermore, although the statute does not provide for a judicial trial, yet an administrative hearing is a prerequisite to an order of deportation, with judicial review of that proceeding granted as a matter of right.