Michael SPINELLA, Plaintiff,

v.

P. A. ESPERDY, District Director of the Immigration and Naturalization Service, Defendant.

United States District Court
S. D. New York.

Oct. 11, 1960.

Leon Rosen, New York City, for plaintiff.

S. Hazard Gillespie, Jr., U. S. Atty. for Southern Dist. of New York, New York City, for defendant. Roy Babitt, Sp. Asst. U. S. Atty., New York City, of counsel.

LEVET, District Judge.

The defendant has moved for summary judgment.

In his complaint, the plaintiff states:

"First: That this is an action for a Declaratory Judgment under the Declaratory Judgment Act (28 U.S.C. § 2201), for review under the Administrative Procedure Act (5 U.S.C. § 1009) and for a permanent injunction. It arises under the Immigration and Nationality Act of 1952, particularly Section 249 (8 U.S.C. § 1259) and under the Constitution of the United States, particularly Article I, Section 9, Clause 2; Article III, Section 2; and the Fourth, Fifth and Eighth Amendments thereto. Jurisdiction of this Court is based upon the above-named provisions, Section 279 of the Immigration and Nationality Act (8 U.S.C. § 1329) and 28 U.S.C. § 1331."

The plaintiff, a native and citizen of Italy, alleges that he was admitted to the United States in 1899 when four years old; that he was a lawful resident of the United States, but was unlawfully deported by agents of the United States Immigration and Naturalization Service on June 12, 1953.

The complaint states:

(1) That the Immigration and Naturalization Service initiated deportation proceedings against plaintiff on April 1, 1952, charging that plaintiff on February 1, 1952, had entered the United States without a visa and without inspection.

(2) That after a hearing on said charges and on plaintiff's application for suspension of deportation and for pre-examination and voluntary departure, an order of deportation was entered by the hearing officer on May 9, 1952, based on said charges, and denying plaintiff's application for discretionary relief from deportation.

(3) The complaint further states that plaintiff appealed from the above order of deportation and denial of discretionary relief to the Board of Immigration Appeals, which dismissed said appeal on November 7, 1952. A subsequent motion for reconsideration, filed on November 29, 1952, was denied on February 19, 1953.

(4) The plaintiff further alleges that upon the commencement of the aforesaid deportation proceedings, he was imprisoned and denied bail; that a petition for a writ of habeas corpus for release on bail pending an administrative determination of deportability was dismissed by the District Court for the Southern District of Florida, and that upon an appeal therefrom to the Court of Appeals of the Fifth Circuit, this appeal was dismissed as moot, United States ex rel. Spinella v. Savoretti, 5 Cir., 1953, 201 F.2d 364, and a petition for certiorari was denied by the United States Supreme Court on June 8, 1953, 345 U.S. 975, 73 S.Ct. 1124, 97 L.Ed. 1390.

(5) Thereafter, plaintiff was seized in Washington, D. C., taken to Maryland and then to New York, where he was deported by plane to Italy.

(6) Now plaintiff claims that defendant Esperdy has threatened to arrest him, hold him without bail, and deport him from the United States, pursuant to Section 242(a) of the Immigration and Nationality Act (8 U.S.C.A. § 1252(a)). Nowhere does plaintiff assert in plain language that he now resides in the United States. The only statements remotely resembling this in the complaint are as follows:

"Third: * * * Since that time [1899] he has been a lawful permanent resident of the United States."

"Fifth: * * * Plaintiff alleges that said deportation was illegal, null and void and that while he has resided abroad pursuant thereto, he has in fact maintained a continuous residence in the United States for purposes of Section 249(b) of the Immigration and Nationality Act."

The records of the Immigration Commissioner submitted to this court on this motion show the following:

### Proceedings before Administrative Bodies

(1) Extensive deportation hearings were held before a hearing officer, commencing on April 8, 1952, at which plaintiff was represented by experienced counsel. The hearing officer concluded that on February 1, 1952, plaintiff had entered the United States at Miami, Florida, without an immigration visa and had claimed to be a citizen, knowing this claim to be false; that he was thereby subject to deportation; and that the plaintiff's application for (discretionary) suspension of deportation should be denied.

(2) On September 15, 1952, a request was made before the Board of Immigration Appeals to reopen the hearing to submit additional evidence which, as conceded by plaintiff's then counsel, pertained *solely* to the question of discretionary relief. His attorney appears to have admitted at this hearing that Spinella was subject to deportation on the ground that he had no proper visa at the time of his last entry.

(3) On or about November 7, 1952, the Board of Immigration Appeals, in a five and one-half page report, dismissed the appeal, denied the application for suspension, concluded that the plaintiff was deportable, and that if only as a matter of discretion no relief should be granted. The record of plaintiff was cited as establishing deportability on the charges in the warrant of arrest.

(4) A subsequent motion to reconsider this decision was denied by the Board of Immigration Appeals on February 19, 1953. On June 11, 1953, a warrant of deportation was issued by the Commissioner of Immigration at Washington, D. C.

(5) Later, on or about March 6, 1959, the plaintiff made application to the United States Department of Justice, Immigration and Naturalization Service, for permission to reapply for admission

into the United States. This application was denied on March 25, 1959, which decision was affirmed by the Acting Regional Commissioner, Southeast Region, on July 8, 1959. No further action was taken on the application.

### Habeas Corpus Proceedings in the United States District Court for Florida

(1) On or about April 4, 1952, plaintiff, as relator, petitioned the United States District Court for the Southern District of Florida, Miami Division, for a writ of habeas corpus, which was denied by that court. On April 15, 1952, plaintiff filed an appeal from the district court's denial to the Court of Appeals for the Fifth Circuit.

(2) On or about June 15, 1952, plaintiff submitted a petition for writ of habeas corpus for bail, pending the appeal, to Mr. Justice Black of the United States Supreme Court and secured an order on June 25, 1952 for $10,000 bail, which plaintiff thereupon posted.

(3) On or about January 29, 1953, the Fifth Circuit, in a per curiam decision, dismissed the appeal from the district court's decision as moot, stating in part: "We think it clear: that appellant has exhausted his administrative remedies; that the deportation order is now final; that the question raised by his appeal, whether the court erred in denying him bond pending the deportation proceedings, has become moot; and that the appeal should be dismissed." 201 F.2d 364.

### Declaratory Judgment and Injunction Proceedings in the District Court of the District of Columbia

(1) Sometime in 1956, plaintiff instituted an action against the Attorney General in the United States District Court of the District of Columbia seeking (1) to declare the deportation order, (2) the order denying discretionary relief, and (3) the ouster, illegal; and (4) to enjoin the defendant from interfering with plaintiff's return to the United States. Upon application for preliminary injunction to permit plaintiff's return to the United States to press the action; Judge Letts of the District Court of the District of Columbia denied the motion on June 23, 1956.

(2) On June 14, 1957, United States District Judge McGuire, in the aforesaid action in the District of Columbia, denied plaintiff's motion for summary judgment and granted that of the defendant, the Attorney General. After reviewing the proceedings theretofore taken, Judge McGuire declared:

"The petitioner appears to make much of the fact that the authorities acted in relation to the execution of the warrant before the mandate of the Court of Appeals had been received. This is of no moment. The original proceeding in the Southern District of Florida was not a proceeding to challenge the validity of his seizure as an immigrant without a visa (he admits this was proper and was convicted in criminal proceedings arising out of the representations made) but a habeas corpus proceeding in the nature of an application for bail which became moot by the action of Mr. Justice Black. So the failure to wait for the filing of a mandate which he now claims to be critical means nothing at all. The administrative proceedings were long since over and had been resolved against him. He took no legal steps in relation to them. Indeed, he even asked for voluntary departure and that was denied as it should have been on the record. Nothing remained. That being the situation, the warrant of deportation became immediately operable. It was immediately executed, as it should have been, and his deportation was therefore one in pursuance of law." (See unreported memorandum decision, p. 3.)

(3) On February 13, 1958, an appeal by Spinella from the District Court of the District of Columbia to the Court of Appeals for that circuit was dismissed.

The plaintiff now contends that the order of deportation upon which he was deported was illegal, null and void for the following reasons:

(1) No visa for plaintiff's return from Havana, Cuba, was required under Sections 175.44(f) and 176.202(h) of Title 8, Code of Federal Regulations.

(2) Plaintiff did not enter the United States without inspection, as charged. The record of the administrative hearing (a) contains insufficient evidence of false and misleading statements; and (b) the alleged false and misleading statements were immaterial.

(3) The hearing resulting in the deportation order deprived the plaintiff of due process of law because (a) the hearing officer was under the direction and control of, and subordinate to, the District Director, Miami, Florida, who supervised the investigation and prosecution of the case; (b) the District Director had received confidential information which was made available to the hearing officer, but not to the plaintiff; (c) the proceedings were conducted under a "barrage of unfavorable and prejudicial publicity."

(4) The Board of Immigration Appeals pre-judged the appeal of the said order, contrary to the regulations (8 C.F.R., 1949 ed., Section 903(d)). Apparently, the plaintiff bases this upon the charge that an alleged list of individuals, including the name of plaintiff, was prepared by the Attorney General, indicating those persons destined for deportation.

Plaintiff now is said to be (at least his attorney so states in his affidavit) somewhere in the United States, refusing to state where. No statement to that direct effect by plaintiff appears.

Apparently, from the affidavit of plaintiff's attorney, he has sought, through negotiations with a Deputy District Director, to effectuate a surrender on bail satisfactory to plaintiff and has been unable to do so.[1]

Plaintiff contends that Section 242(a) of the Immigration and Nationality Act (8 U.S.C.A. § 1252(a)) is unconstitutional, in violation of the Fourth and Eighth Amendments to, and Art. III, Section 2 of, the Constitution.

The prayer for relief in this action seeks the following relief:

"Wherefore, plaintiff prays for Judgment:

"(a) Directing the defendant to create a record of plaintiff's lawful admission for permanent residence;

"(b) Declaring Section 242(a) of the Immigration and Nationality Act (8 U.S.C. § 1252(a)) unconstitutional;

"(c) Issuing a permanent injunction restraining the defendant from deporting, or attempting to deport plaintiff, or from molesting him;

"(d) Restraining the defendant from deporting or molesting plaintiff pending the final determination of this action; and

"(e) For such other and further relief as to this court may seem just and equitable in the premises."

The plaintiff also seeks a preliminary injunction pendente lite to restrain defendant from taking plaintiff into custody on the claim that Section 242(a) of the Act (8 U.S.C.A. § 1252(a)) is unconstitutional, and seeks a convention of a three-judge statutory court to pass upon the claimed unconstitutionality.

## Constitutionality

Title 8 U.S.C.A. § 1252(a), superseding Section 23 of the Internal Security Act of 1950, 8 U.S.C. § 156, provides:

"§ 1252. Apprehension and deportation of aliens—Arrest and custody; review of determination by court

"(a) Pending a determination of deportability in the case of any alien

---

[1] An order has been made in an action brought by plaintiff's attorney (60 Civ. 1135) enjoining the defendant in this action from maintaining surveillance of Leon Rosen, plaintiff's attorney herein.

as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody. Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody; or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole. But such bond or parole, whether heretofore or hereafter authorized, may be revoked at any time by the Attorney General, in his discretion, and the alien may be returned to custody under the warrant which initiated the proceedings against him and detained until final determination of his deportability. Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or parole pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability."

The constitutionality of Section 23 has been previously determined.[2] Carlson v. Landon, 1952, 342 U.S. 524, 72 S.Ct. 525, 532, 96 L.Ed. 547. Here, Mr. Justice Reed, speaking for the court, declared:

"The power to expel aliens, being essentially a power of the political branches of government, the legislative and executive, may be exercised entirely through executive officers, 'with such opportunity for judicial review of their action as Congress may see fit to authorize or permit.' This power is, of course, subject to judicial intervention under the 'paramount law of the Constitution.'

"Deportation is not a criminal proceeding and has never been held to be punishment. No jury sits." 342 U.S. at page 537, 72 S.Ct. at page 533.

Mr. Justice Reed, in the same opinion, also held that delegation of power to the Attorney General's discretion did not violate the Due Process Clause of the Fifth Amendment. Neither is there any violation of the Eighth Amendment in the statutory provision regarding bail. See also United States ex rel. Nukk v. District Director of Immigration, 2 Cir., 1953, 205 F.2d 242; Ocon v. Landon, 9 Cir., 1954, 218 F.2d 320.

Plaintiff contends that Section 1252 (a) contravenes the Fourth Amendment in empowering the Attorney General to issue indiscriminate warrants for the arrest of aliens "without the safeguard of Oath or Affirmation and without the additional requirement that it be issued only upon probable cause." While the Supreme Court declined to pass upon a similar argument in Abel v. United States, 1960, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668, because the issue was not properly raised in the district court, some pertinent observations there were nonetheless made. In his majority opinion, Mr. Justice Frankfurter stated that "the constitutional validity of this long-standing administrative arrest procedure in deportation cases has never been directly challenged in reported litigation." 362 U.S. at page 233, 80 S.Ct. at page 694. However, the court did refer to its fre-

---

2. Internal Security Act of 1950, § 23: " * * * Pending final determination of the deportability of any alien taken into custody under warrant of the Attorney General, such alien may, in the discretion of the Attorney General (1) be continued in custody; or (2) be released under bond in the amount of not less than $500, with security approved by the Attorney General; or (3) be released on conditional parole * * *." The comparable section in the 1952 Act is the same in principle.

quent upholding of administrative deportation proceedings shown to have commenced by arrests made pursuant to such warrants. Id. 362 U.S. at page 234, 80 S.Ct. 683, citing as an example Carlson v. Landon, supra. Justice Frankfurter noted the "impressive historical evidence of acceptance of the validity of statutes providing for administrative deportation arrest from almost the beginning of the nation * * *." 362 U.S. at page 234, 80 S.Ct. at page 694.

Moreover, objections to the statute in question, based on the Fourth Amendment, were also made before Judge McGuire in the District of Columbia and evidently rejected there by the court.

■ Under these circumstances, where the unsoundness of the constitutional attack on the statute appears from previous decisions of the highest court in the land, there is no basis for convening a three-judge statutory court. California Water Service Co. v. City of Redding, 1938, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323. See also Otten v. Baltimore & Ohio R. Co., 2 Cir., 1953, 205 F.2d 58; Wicks v. Southern Pacific Co., 9 Cir., 1956, 231 F.2d 130, certiorari denied Wicks v. Brotherhood, etc., 1956, 351 U.S. 946, 76 S.Ct. 845, 100 L. Ed. 1471.

### Creation of Record

■ The plaintiff seeks to have this court direct the defendant to create a record of plaintiff's lawful admission for permanent residence. Apparently this is based upon Title 8 U.S.C.A. § 1259, as amended, which reads:

"§ 1259. Record of admission for permanent residence in the case of certain aliens who entered the United States prior to June 28, 1940.

"A record of lawful admission for permanent residence may, in the discretion of the Attorney General and under such regulations as he may prescribe, be made in the case of any alien, as of the date of the approval of his application or, if entry occurred prior to July 1, 1924, as of the date of such entry, if no such

record is otherwise available and such alien shall satisfy the Attorney General that he is not inadmissible under section 1182(a) of this title insofar as it relates to criminals, procurers and other immoral persons, subversives, violators of the narcotic laws or smugglers of aliens, and he establishes that he—

"(a) entered the United States prior to June 28, 1940;

"(b) has had his residence in the United States continuously since such entry;

"(c) is a person of good moral character; and

"(d) is not ineligible to citizenship. As amended Aug. 8, 1958, Pub.L. 85–616, 72 Stat. 546."

The complaint is not verified by the plaintiff but rather by his attorney. Paragraph 4 of the complaint demands that the defendant create a record and states that defendant has refused to do so. No affidavit by the plaintiff or by anyone else having any personal knowledge was submitted.

Under the regulations, 8 C.F.R. § 249.1, as amended, an alien satisfying the eligibility requirements of Section 1259 should apply for the creation of a record to the District Director having jurisdiction over the alien's residence. An adverse decision gives the applicant the right of appeal in accordance with the procedure outlined in 8 C.F.R. §§ 103.1–103.7 (Supp.1960).

Plaintiff has not shown compliance with the prerequisites of Section 1259 and he has also overlooked the discretionary feature conditioning creation of a record. Again, those administrative remedies available to plaintiff upon any rejection of his application have yet to be utilized or exhausted so as to perfect an appeal to this court.

In addition, there is no evidence regarding plaintiff's present residence which would authorize this particular District Director to create the desired record. There is no showing in the record that plaintiff re-entered the Unit-

ed States, which he supposedly has done, through the Port of New York. Under the circumstances, this court cannot serve as a judicial "short cut" to circumvent or by-pass the orderly processes established for administering the immigration laws.

## Res Judicata

■ The plaintiff, as heretofore indicated, has litigated the question of his prior deportation. It was evident that the determinations in the District Courts of Florida and the District of Columbia, together with the action by the respective appellate courts, are res judicata as to any issues raised here. Anselmo v. Hardin, 3 Cir., 1958, 253 F.2d 165; United States ex rel. Bauer v. Clark, 2 Cir., 1947, 161 F.2d 729, certiorari denied, 1947, 332 U.S. 839, 68 S.Ct. 210, 92 L.Ed. 411; Cruz-Sanchez v. Robinson, D.C.S.D.Cal., Central Div., 1955, 136 F. Supp. 52, affirmed, 9 Cir., 1957, 249 F. 2d 771.

■ As Mr. Justice Frankfurter noted in Angel v. Bullington, 1947, 330 U.S. 183, 192–193, 67 S.Ct. 657, 91 L.Ed. 832:

"* * * The doctrine of res judicata reflects the refusal of law to tolerate needless litigation. Litigation is needless if, by fair process, a controversy has once gone through the courts to conclusion. * * * And it has gone through, if issues that were or could have been dealt with in an earlier litigation are raised anew between the same parties."

The complaint in the District of Columbia action was said to be an action for a declaratory judgment and for review under the Administrative Procedure Act, arising under the immigration laws and the Constitution of the United States, etc. In general, the bases of the action were the same as those present in this action, including the reference to the list alleged to have been prepared by the Attorney General. As previously stated, the motion for preliminary injunction was denied by Judge Letts on June 23, 1956. The motion for summary judgment against the plaintiff was granted by Judge McGuire on June 14, 1957. United States ex rel. Accardi v. Shaughnessy, 1954, 347 U.S. 260, 74 S. Ct. 499, 98 L.Ed. 681, upon which plaintiff now relies, was decided on March 15, 1954, long before the United States District Court of the District of Columbia acted on plaintiff's complaint, which had raised the same issues.

Plaintiff asserts that the Accardi decision ruled the "existence of said list of individuals constituted prejudgment and the consequent denial of a fair hearing." This interpretation, however, was explicitly rejected by the Supreme Court in its second Accardi opinion, Shaughnessy v. U. S. ex rel. Accardi, 1955, 349 U.S. 280, 75 S.Ct. 746, 99 L.Ed. 1074. In reversing the circuit court, 2 Cir., 1955, 219 F.2d 77, the Supreme Court agreed with the dissent below which had regarded the first Accardi opinion as "meaning 'no more * * * than that [Accardi's] allegations sufficiently charged "dictation" by the Attorney General,' entitling Accardi to a hearing on the question of 'whether the Board's denial of discretionary relief represented its own untrammelled decision or one dictated by the Attorney General.'" 349 U.S. at page 282, 75 S.Ct. at page 747. The Supreme Court sustained the finding of the district court, upon remand, that the Board of Immigration Appeals had "'reached their individual and collective decision on the merits, free from any dictation or suggestion * * *'." 349 U.S. at page 282, 75 S.Ct. at page 747.

Plaintiff's line of argument had been earlier pursued in the District of Columbia, where, as we have seen, Judge McGuire found no justiciable controversy and granted summary judgment against the plaintiff. By then, more than two years had passed since the second Accardi decision had been handed down. It is most evident that plaintiff has utilized all available judicial relief. He has had his day in court. Surely, he cannot expect, nor is he entitled to, an interminable relitigation of the same basic issues.

It is also true that where an alien has been deported from the United States pursuant to a warrant of deportation, it is not permissible to allow a collateral attack on the previous deportation order in a subsequent proceeding, unless the court is convinced that there was a gross miscarriage of justice in the former proceedings. United States ex rel. Steffner v. Carmichael, 5 Cir., 1950, 183 F.2d 19, 20, certiorari denied, 1950, 340 U.S. 829, 71 S.Ct. 67, 95 L.Ed. 609. See also United States ex rel. Rubio v. Jordan, 7 Cir., 1951, 190 F.2d 573; United States ex rel. Koehler v. Corsi, 2 Cir., 1932, 60 F.2d 123; Quilodran-Brau v. Holland, D.C. E.D.Pa., 1955, 132 F.Supp. 765, affirmed, 3 Cir., 1956, 232 F.2d 183.

While there had been some question as to whether an action for declaratory judgment might be utilized to review a deportation (see, e. g., Brownell v. Rubinstein, 1954, 346 U.S. 929, 74 S.Ct. 319, 98 L.Ed. 421, affirming by an equally divided court 92 U.S.App.D.C. 328, 206 F.2d 449; Heikkila v. Barber, 1953, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972; Batista v. Nicolls, 1 Cir., 1954, 213 F.2d 20), it now appears that under the Immigration and Nationality Act of 1952, judicial review of an administrative deportation order may be obtained by an action for declaratory judgment, pursuant to Section 10 of the Administrative Procedure Act, Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868.

In any event, plaintiff here has had previous recourse to both habeas corpus and declaratory judgment proceedings and has been rejected on each.

### Improper Defendant

No cause of action against the defendant District Director of the Immigration and Naturalization Service is set forth in the complaint.

The plaintiff is not in custody. The officer in charge of enforcing the deportation order is the District Director having jurisdiction of the Florida District. See Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 53, 75 S.Ct. 591. In fact, as seen above, plaintiff's application in March of 1959 for permission to reapply for admission into the United States was addressed to, and denied by, the District Director of Miami, Florida. There is no indication that plaintiff is sojourning anywhere in this district. The complaint merely recites that the defendant Director threatens arrest, holding without bail, and deportation. No sound reason for bringing this action against this particular District Director is alleged. What plaintiff seeks is to preclude defendant from deporting plaintiff if plaintiff should come into custody of defendant.

If any action lies against the Commissioner of Immigration, the action must be brought in the District of Columbia. Blackmar v. Guerre, 1952, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534; Connor v. Miller, 2 Cir., 1949, 178 F.2d 755.

### Invalidity of Hearing

In Fougherouse v. Brownell, D.C.D.Or. 1958, 163 F.Supp. 580, 584, Judge East thus summarized the scope of judicial review:

"Upon a collateral review in habeas corpus it is enough that there was some evidence from which the findings and conclusion of the administrative tribunal could be deduced and that no error was committed so flagrant as to convince the Court of the essential unfairness of the trial. United States ex rel. Harisiades v. Shaughnessy, 2 Cir., 1951, 187 F.2d 137, 141, affirmed Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586. Review by way of declaratory judgment under Sec. 10 of the Administrative Procedure Act imposes upon the District Court the duty to hold unlawful and set aside agency action, findings, and conclusions found to be unsupported by substantial evidence. 60 Stat. 243, 5 U.S.C.A. § 1009 (Cum.Supp.1950). It is now settled that in a deportation proceeding, whether habeas corpus or declaratory judgment is sought, the

544

scope of judicial function is the same. Cruz-Sanchez v. Robinson, D. C.Cal.1955, 136 F.Supp. 52; United States ex rel. Brzovich v. Holton, 7 Cir., 1955, 222 F.2d 840. It follows, therefore, that in order to sustain the order of deportation herein involved, this Court must find from a review of the entire record made before the Service that the order is supported by substantial evidence and is not arbitrary, capricious, or an abuse of discretion, nor contrary to the Constitution, nor without observance of proper procedure. Title 5 U.S.C.A. Sec. 1009(e)."

However, in the final analysis, this court is not required to re-examine the validity of the hearing which has been previously determined.

Conclusions

1. There are no substantial constitutional questions involved herein.

2. The doctrine of res judicata precludes the prosecution of this action.

3. The present defendant is improperly joined.

The motion of the defendant for summary judgment is granted.

Settle order on notice.