**Application of Herman Frederick MARKS for a Writ of Habeas Corpus.**

**Herman Frederick MARKS, Applicant,**

v.

**P. A. ESPERDY, as District Director of the Immigration and Naturalization Service for the New York District, Respondent.**

United States District Court
S. D. New York.
July 15, 1961.

Murray A. Gordon, New York City, for petitioner.

Robert M. Morgenthau, U. S. Atty., S. D., New York, New York City, for respondent; Charles J. Hartenstine, Jr., Special Asst. U. S. Atty., New York City, of counsel.

LEVET, District Judge.

The above-named petitioner, Herman Frederick Marks, by order to show cause has applied for an order (a) directing his release from present custody of the District Director of Immigration and Naturalization Service of the United States pursuant to bail or parole pending the determination of his deportability, and, in the event he is determined to be deportable, pending his deportation, or, in the alternative, (b) directing an immediate judicial hearing on the issue of his American citizenship.

The matter came on to be argued before this court on June 15, 1961.

### Facts

1. Petitioner was born on August 1, 1921, in Milwaukee, Wisconsin, and became an American citizen at birth, which citizenship petitioner claims never to have renounced or surrendered.

2. Petitioner claims to have been unlawfully imprisoned and detained since January 26, 1961, as an allegedly deportable alien by P. A. Esperdy, District Director of the Immigration and Naturalization Service of the United States, at the Federal Detention Headquarters, 227 West Street, New York City, New York, within the Southern District of New York.

3. On January 26, 1961, charges were served upon the petitioner by the Immigration and Naturalization Service for the institution of deportation proceedings under Section 242 of the Immigration and Nationality Act, 8 U.S.C.A. § 1252. These charges alleged that petitioner, although a native-born American, was no longer a citizen or national of the United States, having become a member of the Armed Forces of Cuba from January 2, 1959 to May 1960, without the consent of the Secretary of State or Secretary of Defense of the United States; that petitioner is an excludable alien on the grounds that he had been convicted on January 11, 1952 in Milwaukee, Wisconsin, for an offense involving moral turpitude and that at the time he reentered the United States on July 22, 1960 he did not have the proper entry papers required of an alien.

4. Hearings on the aforesaid charges were commenced before a Special Inquiry Officer of the Immigration and Naturalization Service on January 26, 1961. Further hearings were held before said officer on January 30, February 13 and 27, March 2, 23, 27 and 30, and April 6, 1961. During the course of these hearings, and by letter dated March 16, 1961 (see Exhibit 2 attached to petition), counsel for petitioner requested the United States Attorney General to exercise his discretion and release petitioner on bail or parole pending the proceedings. This request was denied by the Attorney General in a letter dated March 27, 1961 (see Exhibit 3 attached to the petition).

5. The decision of the Special Inquiry Officer was handed down on May 31, 1961 (see Exhibit 4 attached to the petition).

6. *Decision of the Special Inquiry Officer.*

The findings of fact and conclusions of law made by the Special Inquiry Officer as to petitioner's deportability were as follows:

"Findings Of Fact As To Deportability

"On the basis of all the evidence presented, it is found:

"1. That the respondent was born in Milwaukee, Wisconsin, on August 1, 1921;

"2. that the respondent served in the Armed Forces of Cuba from about January 6, 1959 to May 1960;

"3. that the respondent's entry into such service in the Armed Forces of Cuba was voluntary;

"4. that the respondent did not receive authorization from the Secretary of State and Secretary of Defense to enter and serve in the Armed Forces of Cuba;

"5. that the respondent last entered the United States at El Paso, Texas, on or about July 22, 1960, and was admitted as a United States citizen;

"6. that at the time of such entry the respondent was an alien, of stateless nationality;

"7. that at the time of such entry the respondent intended to remain in the United States indefinitely;

"8. that at the time of such entry the respondent was not in possession of an immigrant visa or document in lieu thereof;

"9. that on November 14, 1951, the respondent was convicted in the Municipal Court, City and County of Milwaukee, State of Wisconsin, for the offense of carnal knowledge and abuse.

"Conclusions Of Law As To Deportability

"Upon the basis of the foregoing findings of fact, it is concluded:

"1. That under the 14th Amendment to the Constitution of the United States and 1992 R.S., the respondent became a United States citizen at birth;

"2. that under Section 349(a) (3) of the Immigration and Nationality Act, the respondent lost his United States citizenship on or about January 6, 1959, by serving in the Armed Forces of Cuba, not having received prior authorization from the Secretary of State and the Secretary of Defense to enter and serve in such forces;

"3. that under Section 241(a) (1) of the Immigration and Nationality Act, the respondent is subject to deportation, in that at the time of entry he was within one or more of the classes of aliens excludable by the law existing at the time of such entry, to wit: aliens who are immigrants not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card or other valid entry document, and not exempted from the possession thereof by said Act or regulations made thereunder, under Section 212(a) (20) of the Act;

"4. that under Section 241(a) (1) of the Immigration and Nationality Act, the respondent is subject to deportation, in that at the time of entry he was within one or more of the classes of aliens excludable by the law existing at the time of such entry, to wit: aliens who have been convicted of a crime involving moral turpitude, under Section 212(a) (9) of the Act: carnal knowledge and abuse.

"Order: It Is Ordered That the respondent be deported from the United States in the manner provided by law on the charges contained in the order to show cause." (See Exhibit 4 attached to the petition.)

7. Petitioner has filed an appeal from the decision of the Special Inquiry Officer to the Board of Immigration Appeals. Oral argument was set for June 22, 1961.

Petitioner contends in substance that he is in fact and in law a citizen of the

United States and not an alien. He concedes service in the Rebel Army during the Cuban Revolution prior to January 2, 1959, but contends that his Cuban activities subsequent to this date were not such as to constitute an entering or serving in the armed forces of a foreign state and that he is consequently not subject to expatriation or denationalization.

Petitioner therefore seeks admission to bail or parole at this time, or, in the alternative, for a hearing on the issue of his American citizenship.

Respondent counters in turn with what he maintains are persuasive and valid reasons justifying the detention of petitioner. Petitioner is said to have admitted on January 25, 1961 that he was then single, unemployed, and without a fixed address in the United States; that he had moved frequently since his reentry into the United States in July 1960; and that he had lived in various hotels in New York City under an assumed name. Moreover, it is alleged, prior to his apprehension by officers of the Immigration Service, petitioner had been arrested more than thirty times in cities throughout the United States, was convicted of more than a dozen crimes, including an offense of carnal knowledge and abuse in 1951, was arrested in 1950 as an escapee, and again in 1954 as a fugitive from justice, and violated parole in 1954. Respondent argues that in view of the foregoing background of the petitioner, the Service was proper in concluding that petitioner was likely to abscond and be unavailable for deportation proceedings or for deportation in the event that an order to that effect should ultimately be entered.

It is also argued that the Attorney General's decision to continue petitioner in custody pending final determination of deportability was a proper exercise of discretion. Much of the delay encountered in the disposition of petitioner's hearing before the Special Inquiry Officer is attributed to postponements granted at the request of petitioner or his counsel. In view of petitioner's appeal to the Board of Immigration Appeals, filed June 7, 1961, and the scheduled hearing set for June 22, 1961, respondent maintains that the Attorney General is proceeding with reasonable dispatch for a final administrative determination of petitioner's deportability.

The respondent also argues that petitioner should exhaust his administrative remedies before seeking judicial relief, since the final executive decision may render action by the court unnecessary.

Two questions are therefore presented to this court:

1. Is the petitioner entitled to bail or parole, and should this court grant bail or parole?

2. If bail or parole is not granted, should the court conduct a judicial hearing to determine the citizenship of the petitioner?

 Congress has entrusted the Attorney General with the authority to prescribe and promulgate regulations for the administration and enforcement of the immigration and nationality laws. 8 U.S.C.A. § 1103. Orderly governmental process requires that any judicial intervention into this realm should at least abide completion of the administrative proceedings pending before such executive officers. See United States v. Sing Tuck, 1904, 194 U.S. 161, 24 S.Ct. 621, 48 L.Ed. 917; Florentine v. Landon, 9 Cir., 1953, 206 F.2d 870, certiorari denied 1954, 347 U.S. 927, 74 S.Ct. 530, 98 L.Ed. 1080. Jurisdiction in the executive officer (here the respondent, to whom the Attorney General has delegated certain of his duties and powers) has been found to exist even though an initial determination is required as to whether a person is an alien. As stated by Mr. Justice Holmes in the Sing Tuck case, supra, 194 U.S. at pages 167–168, 24 S.Ct. at pages 622–623:

"By the act of August 18, 1894, 28 Stat. 372, 390, 'In every case where an alien is excluded from admission into the United States under any law or treaty now existing or hereafter made, the decision of the appropriate immigration or customs offi-

cers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the Secretary of the Treasury.' The jurisdiction of the Treasury Department was transferred to the Department of Commerce and Labor by the act of February 14, 1903, 32 Stat. 825. It was held by the Circuit Court of Appeals that the act of 1894 should not be construed to submit the right of a native-born citizen of the United States to return hither to the final determination of executive officers, and the conclusion was assumed to follow that these cases should have been tried on their merits. Before us it was argued that, by the construction of the statute the fact of citizenship went to the jurisdiction of the immigration officers, (see Gonzales v. Williams, 192 U.S. 1, 7 [24 S.Ct. 177, 48 L.Ed. 317]; Miller v. Horton, 152 Massachusetts, 540, 548 [26 N.E. 100, 10 L.R.A. 116]; and therefore that the statute did not purport to apply to one who was a citizen in fact. We are of opinion however that the words quoted apply to a decision on the question of citizenship, and that, even if it be true that the statute could not make that decision final, the consequence drawn by the Circuit Court of Appeals does not follow and is not correct.

" * * * But if the act is valid, even if ineffectual on this single point, then it points out a mode of procedure which must be followed before there can be a resort to the courts. In order to act at all the executive officer must decide upon the question of citizenship. If his jurisdiction is subject to being upset, still it is necessary that he should proceed if he decides that it exists. An appeal is provided by the statute. The first mode of attacking his decision is by taking that appeal. It [sic] the appeal fails it then is time enough to consider whether upon a petition showing reasonable cause

there ought to be a further trial upon *habeas corpus*."

In respect to petitioner's right to proceed by habeas corpus, Mr. Justice Holmes also noted:

" * * * We may add that, even if it is beyond the power of Congress to make the decision of the department final upon the question of citizenship, we agree with the Circuit Court of Appeals that a petition for *habeas corpus* ought not to be entertained, unless the court is satisfied that the petitioner can make out at least a *prima facie* case. A mere allegation of citizenship is not enough. But, before the courts can be called upon, the preliminary sifting process provided by the statutes must be gone through with. Whether after that a further trial may be had we do not decide." 194 U.S. at page 170, 24 S.Ct. at page 624.

Again, in Florentine v. Landon, supra, where deportation proceedings were instituted against a native-born American charged with having lost his citizenship when he left the country during wartime to avoid induction, Chief Judge Denman observed:

"There is no merit to Florentine's claim that the fact that he is claiming United States citizenship gives him a right to institute this habeas corpus proceeding without regard to the status of the administrative proceeding. As was stated in United States v. Sing Tuck, supra, 194 U. S. at page 168, 24 S.Ct. at page 623, ' * * * it is one of the necessities of the administration of justice that even fundamental questions should be determined in an orderly way. If the allegations of a petition for *habeas corpus* setting up want of jurisdiction, whether of an executive officer or of an ordinary court, are true, the petitioner theoretically is entitled to his liberty at once. Yet a summary interruption of the regular order of proceedings, by means of the

writ, is not always a matter of right.'" 206 F.2d at page 871.

The order to show cause herein in effect subjects the retention of petitioner in custody to judicial scrutiny. 28 U.S.C.A. § 2243. Respondent's answer certifies that petitioner is being detained, in the discretion of the Attorney General, pursuant to Section 242(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1252(a), pending final administrative determination of his deportability under Section 241(a) (1) of the Act, 8 U.S.C.A. § 1251(a) (1). See also 8 C.F.R. § 242.-2(b) (1958), as amended. Deportation proceedings were instituted on January 26, 1961 by the issuance and service of an order to show cause under 8 C.F.R. § 242.1(a) (1958), proceedings which have not yet been completed, oral argument having been set for June 22, 1961 before the Board of Immigration Appeals.

Consequently, at the present time, there is no final order of deportation entered by the Immigration Service against the petitioner. The Special Inquiry Officer has found that petitioner lost his citizenship because of certain voluntary acts on his part in Cuba. Having thus been deemed expatriated or denationalized, petitioner's status has been recognized as that of an alien, subjecting him therefore to the tests imposed on aliens by the immigration and nationality laws.

■ If the Special Inquiry Officer's determination concerning petitioner's loss of citizenship is sustained, it would seem that petitioner would be an excludable alien under 8 U.S.C.A. § 1182(a) (9) in view of his Wisconsin conviction for carnal knowledge and abuse, which offense involves moral turpitude. Bendel v. Nagle, 9 Cir., 1927, 17 F.2d 719, 57 A. L.R. 1129. This disqualification is a personal one, arising from the fact of such a conviction, rather than the time or place thereof. Id., 17 F.2d at page 720. Section 1182(a) (9) makes no distinction with respect to excludability between aliens who were formerly citizens, native-born or naturalized, and those who were not. Moreover, as Mr. Justice Burton

noted in United States ex rel. Eichenlaub v. Shaughnessy, 1950, 338 U.S. 521, 530, 70 S.Ct. 329, 333, 94 L.Ed. 307:

"* * * [T]he Act does not require that the offenders reached by it must have had the status of aliens at the time they were convicted. As the Act does not state that necessity, it is applicable to all such offenders, including those denaturalized before or after their convictions as well as those who never have been naturalized."

In any event, consideration of this question at this juncture would be premature in view of the proceedings now pending before the Board of Immigration Appeals.

■ The reasons advanced by respondent for the continued retention of petitioner in custody would seem to be fully sustainable in view of the latter's background and the prevailing circumstances in the case. There has been no indication of any abuse of discretion in this regard by the Attorney General; the procedure followed was valid. Carlson v. Landon, 1952, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547. See also Spinella v. Esperdy, D.C.S.D.N.Y., 1960, 188 F.Supp. 535, 539-541.

From the record I also find that the Attorney General has endeavored up to the present to determine the petitioner's deportability with reasonable dispatch. There has been no clear showing of any illegal detention. See McNally v. Hill, 1934, 293 U.S. 131, 139, 55 S.Ct. 24, 79 L.Ed. 238.

■■ Petitioner is entitled to a judicial review and determination of his claim to citizenship. Ng Fung Ho v. White, 1922, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938. This is a right which no one would or could deny him. The immediate question is whether this ultimate remedy is presently appropriate or imperative. In the considered opinion of the court, "no special circumstances exist why the orderly way provided by Congress to raise the fundamental question of citizenship through the administra-

tive proceedings should not be pursued." Florentine v. Landon, supra, 206 F.2d at page 871.

I am therefore compelled at this time to deny the application for bail or parole and similarly a judicial inquiry into the issue of petitioner's citizenship.

This proceeding must therefore be dismissed; the writ issued herein must likewise be discharged.

Settle order on notice.