**Brett SORENSON, Petitioner,**

v.

**Charles DANIELS, Warden, Federal Detention Center, Sheridan, Oregon, Edward F. Reilly, Jr., Chairman, U.S. Parole Commission, and Alberto R. Gonzales, Attorney General of the United States of America, Respondents**

**No. CV 05–94–RE.**
**No. CR 88–77–RE.**

United States District Court,
D. Oregon.

April 4, 2005.

Christine Stebbins Dahl, Assistant Federal Public Defender, Portland, OR, for Petitioner.

Kelly Zusman, Assistant United States Attorney, Portland, OR, for Respondents.

## OPINION AND ORDER

REDDEN, District Judge.

The matter before the court is Brett Sorenson's motion (doc. 1) for enforcement of judgment and petition for habeas corpus. Oral argument was held March 14, 2005.

### A. *Background.*

On December 5, 1988, this court sentenced Mr. Sorenson, pursuant to a plea agreement, to 15 years of incarceration (the statutory mandatory minimum) for the offense of being an ex-felon in possession of a firearm, with an Armed Career Criminal Enhancement (ACCE). During sentencing, the court noted for the record, and the judgment reiterated, that pursuant to statute, he was not eligible for parole. Thereafter, Mr. Sorenson filed a direct appeal challenging the ACCE, which the Ninth Circuit Court of Appeals denied.

Mr. Sorenson then filed for habeas corpus relief pursuant to 28 U.S.C. § 2255 (2255 motion), alleging ineffective assistance of counsel. The petition was denied and the denial was affirmed by the Ninth Circuit.

Mr. Sorenson then filed a second 2255 motion, alleging his conviction was defective because his civil rights to possess firearms were restored by operation of Oregon law. The petition was denied and the denial was affirmed by the Ninth Circuit.

While incarcerated, Mr. Sorenson earned good time credit. On July 15, 1997, he was released from custody as a result of his good time credit (hereafter referred to as "mandatory release"), with a total of 2,282 days remaining to be served on his original 15–year sentence. At that time, he signed a mandatory release certificate that advised him that upon his release, he would remain under the jurisdiction of the U.S. Parole Commission as if on parole, and that he would be subject to parole until the expiration of the term of his 15–year sentence, less 180 days.

Thereafter, in April 1998, the Parole Commission issued a warrant for Mr. Sorenson's arrest based on a new conviction in Douglas County, Oregon. In November 1998, Mr. Sorenson agreed to revocation of his mandatory release, forfeiture of all time spent on mandatory release (street time credit), and 14 months' incarceration. He was again released from custody in January 2000.

Thereafter, in May 2002, the Parole Commission issued another warrant for Mr. Sorenson's arrest based on several violations of parole conditions. Following a revocation hearing, the Parole Commission revoked Mr. Sorenson's parole, ordering forfeiture of all Mr. Sorenson's street time credit and 28 months' incarceration. Mr. Sorenson appealed to the National Appeals Board, arguing the new sentence was too severe. The National Appeals Board affirmed the Parole Commission's revocation decision, but reduced Mr. Sorenson's incarceration term to 22 months.

Mr. Sorenson was again released from custody in March 2004, with 1,150 days remaining to be served on his original term of incarceration.

Thereafter, on July 28, 2004, the Parole Commission again issued a warrant for Mr. Sorenson's arrest based on additional new law violations and failure to comply with other conditions of parole. After a preliminary interview, the Parole Commission advised Mr. Sorenson that it found probable cause to believe he had violated conditions of his parole, and a revocation hearing has been set.

### Exhaustion of Remedies

The government argues Mr. Sorenson failed to exhaust his administrative remedies because he failed to appeal to the Parole Commission's National Appeals Board. Mr. Sorenson counters there is not an adequate administrative remedy for the issues he has raised and the relief he seeks, i.e., a challenge to Parole Commission jurisdiction, scope of the judgment, execution of a non-parolable sentence, and validity of the parole violation warrant. Mr. Sorenson argues that even if he did not exhaust available administrative remedies, the judicial exceptions of futility and imminent harm apply here.

The district court in its discretion may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding to court." Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990). This court need not delve into the issue of whether Mr. Sorenson exhausted his administrative remedies. Even if, in the exercise of the court's discretion, the court were to excuse any alleged failure to exhaust administrative remedies, Mr. Sorenson's claims are without merit, as discussed below.

## Motion for Enforcement of Judgment

Mr. Sorenson argues the Parole Commission has no jurisdiction over him, and that his good time credit was illegally forfeited by the Parole Commission. He argues that because this court sentenced him to incarceration for a period of 15 years, and noted in the judgment that he was not eligible for parole, he should have been released from prison at the expiration of the custody portion of his sentence without any continuing supervision. Because he was not, the result was, in effect, an illegal forfeiture of his earned good time credit. Mr. Sorenson moves for an order of specific enforcement of the court's sentencing judgment and a writ of habeas corpus pursuant to 28 U.S.C. § 2241 releasing him from custody.

Mr. Sorenson does not challenge any of the Parole Commission's computations of good time credit, street time credit, or projected release dates. Rather, he challenges the Parole Commission's and courts' *long-standing interpretation* of statutes governing the execution of sentences and the Parole Commission's "automatic forfeiture of vested statutory good time allowances." Mr. Sorenson asserts the *plain language* of the applicable statutes and the Constitution support his arguments.

Mr. Sorenson argues the Parole Commission lacks jurisdiction over him because the ACCE statute, under which he was sentenced, and federal parole statutes in effect at the time he was sentenced, do not authorize parole or any other form of post-prison supervision.

█ Mr. Sorenson's offense conduct leading to his conviction took place prior to the effective date of the Sentencing Reform Act (Nov. 1, 1987). Pursuant to 18 U.S.C. § 4161 *et seq.*, which remains in effect for federal prisoners who committed offenses prior to November 1, 1987, Mr. Sorenson earned good time credit while he served his 15–year sentence. Section 4163 provides that a prisoner who has served his term, less good time credit, shall be mandatorily released. Upon release, such a prisoner shall "be deemed as if released on parole until the expiration of the maximum term ... for which he was sentenced less one hundred and eighty days." 18 U.S.C. § 4164. Thus, under the statute, Mr. Sorenson was released because of his good time credit but remains under the jurisdiction of the Parole Commission until the expiration of his 15–year term, minus 180 days.

█ Mr. Sorensen concedes that the Ninth Circuit has approved of the Parole Commission's position that good time credit gets an inmate "out the door" and is used up on release. *Boniface v. Carlson,* 881 F.2d 669, 671 (9th Cir.1989). Under Ninth Circuit law, prisoners released mandatorily because of good time credit, as Mr. Sorenson was, are subject to the Parole Commission's supervision exactly as if they had been paroled. *McQuerry v. United States Parole Comm'n,* 961 F.2d 842, 845 (9th Cir.1992); *Boniface v. Carlson,* 881 F.2d at 672. *See also Martin v. U.S. Parole Comm'n,* 108 F.3d 1104, 1106 (9th Cir.1997) (recognizing that release under good time credit statutes constitutes a release on parole). The fact that a prisoner is ineligible for parole under the statutes under which he was sentenced does not mean that he is not lawfully under the jurisdiction of the Parole Commission as a mandatory releasee. *Marchese v. McEachen,* 451 F.2d 555, 556 (9th Cir.1971) (petitioner serving non-parolable sentence subject to "quasi-parole" under good time

credit statutes); *Arciniega v. Freeman,* 439 F.2d 776, 777. (9th Cir.1971) (noting a narcotics violator mandatorily released is under Parole Commission jurisdiction); *Muhammad v. U.S. Parole Comm'n,* 1991 WL 8402 (D.Or.1991).

Mr. Sorenson argues it does not matter that the Ninth Circuit has approved the Parole Commission's position because the applicable statutes and implementing regulation (18 U.S.C. §§ 4163–4164 and 28 C.F.R. § 2.35(b)) are unconstitutional. Mr. Sorenson argues the regulation, and the case law interpreting the statutes and regulation, are contrary to the plain meaning of the statutes and therefore cannot be applied here to dictate a different result. He argues a proper plain language construction of the statutes must result in a conclusion that the Parole Commission regulation under the statutes is *ultra vires* and therefore unenforceable.

■ Under the good time credit statutes Mr. Sorenson challenges, a prisoner may earn good time credit that, if he is not released on parole, will result in his mandatory release from incarceration prior to the expiration of his full term. 18 U.S.C. § 4163. The implementing federal regulation provides that

> Once an offender is conditionally released from imprisonment, either by parole or mandatory release, the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or mandatory release.

28 C.F.R. § 2.35(b).

The arguments Mr. Sorenson makes were rejected in *Boniface v. Carlson, su-*

*pra,* and *Patterson v. Knowles,* 162 F.3d 574, 575–76 (10th Cir.1998). In *Boniface,* the Ninth Circuit specifically agreed with the government that the " 'only function of good time credits is to determine the point in a prisoner's sentence when, in the absence of parole, the prisoner is to be conditionally released on supervision.' " *Boniface v. Carlson,* 881 F.2d at 671 (quoting 28 C.F.R. § 2.35(b)). Further, "Courts have uniformly accepted the Commissioner's conclusion and have held that good time, both statutory and extra or industrial good time, earned during the original incarceration does not survive a parole [or mandatory] release and cannot be credited upon a parole [or mandatory release] violator's sentence." *Boniface* at 671. "Because good time credits no longer exist after parole or mandatory release, the failure to honor such credits following a parole revocation is not a 'forfeiture' to which the protections of the due process clause might apply. Upon being sentenced as a parole violator, an inmate begins a new term upon which he is entitled to credit for only such good time as he earns during the period of his incarceration as a parole violator." *Id.* at 672.

Therefore, this court finds Mr. Sorenson's arguments are without merit. The statutes and regulations in effect on the date of Mr. Sorenson's offense conduct, and Ninth Circuit case law, provide that prisoners must be mandatorily released from their sentences prior to their full term dates, based on accumulated good time credits. A prisoner's period of mandatory release is a part of his full term sentence: the prisoner is continuing to serve the full-term sentence, albeit outside prison walls.

### 2241 Habeas Corpus Petition

Mr. Sorenson argues the Parole Commission's arrest warrant violates the War-

rant Clause of the Fourth Amendment because it was not issued upon probable cause, supported by an oath or affirmation. He requests this court to extend the holding in the recent Ninth Circuit case of *United States v. Vargas–Amaya*, 389 F.3d 901 (9th Cir.2004),[1] that dealt with supervised release violation warrants, to cover his parole violation warrant. In *Vargas–Amaya*, the court held, as a matter of first impression, that the district court did not have jurisdiction to revoke his term of supervised release because a valid warrant was not issued within the supervision period as required by 18 U.S.C. § 3583(i). *Id.* at 906. The court found the warrant was invalid because it was based on unsworn allegations, in violation of the Warrant Clause of the Fourth Amendment. Therefore, the Ninth Circuit reversed the district court's revocation of defendant's supervised release, and concluded supervised release violation warrants are required to be issued "upon probable cause, supported by Oath or affirmation," as required by the Fourth Amendment. *Id.* at 907.

The court in *Vargas–Amaya* discussed whether the warrant, which was based on unsworn facts, was a "warrant" within the meaning of that term in § 3583(i), the statute dealing with supervised release violation procedures. The court agreed with defendant's argument that the plain meaning of the term "warrant" means a document that is based on probable cause and supported by sworn facts. The court cited to a recent Supreme Court case it characterized as affirming that every warrant must meet the requirements of the Warrant Clause and be based upon probable cause, supported by oath or affirmation. *Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 1298–90, 157 L.Ed.2d 1068 (2004).

The Ninth Circuit also quoted *Nathanson v. United States*, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933): "The [Fourth] [A]mendment applies to warrants under any statute; revenue, tariff, and all others." The Ninth Circuit then construed § 3583 "to mean that not all warrants or summonses will extend the district court's jurisdiction to revoke supervised release. Instead, the warrant issued must have been based upon sworn allegations that the person violated a condition of supervised release." 389 F.3d at 906. The court said that while on supervised release, a defendant is subject to lesser Fourth Amendment protection, but he is nonetheless protected by the Fourth Amendment. *Id.* The court said "[u]nlike the Fourth Amendment's malleable restriction on unreasonable searches and seizures, the Warrant Clause is exceptionally clear and provides that '*no Warrants shall issue*, but upon probable cause, supported by Oath or affirmation'." *Id.* at 907, quoting U.S. Const. amend. IV (emphasis in original). The Ninth Circuit concluded that while certain searches may be permissible with less than probable cause, "under the Fourth Amendment, no warrant is valid unless there is probable cause supported by sworn facts." *Id.*

The government argues that *Vargas–Amaya* is not controlling in this case because the Ninth Circuit was interpreting the supervised release statute, 18 U.S.C. § 3583(i), and not the parole statute that governs revocation of federal parole terms, 18 U.S.C. § 4213. The government also argues a Parole Commission warrant is an administrative warrant that does not require full Fourth Amendment protections, citing to *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987),

---

1. The government's request for rehearing in      this case is pending.

and *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In *Griffin,* the Supreme Court distinguished between "administrative warrants" and "judicial warrants," noting that administrative warrants are issued on less than the probable cause required by the Fourth Amendment. *Griffin* at 877–78, 107 S.Ct. 3164. In *Morrissey,* the Supreme Court emphasized that parole is unlike the criminal process and that procedural due process protections may be far more "flexible." *Morrissey* at 489, 92 S.Ct. 2593. The Court observed that a parolee does not enjoy "the absolute liberty to which every citizens is entitled, but only [a] conditional liberty properly dependent on observance of special parole restrictions." *Id.* at 480, 92 S.Ct. 2593.

Further, "parolees are neither totally stripped nor fully vested with constitutional protections. They are different from other citizens and they may, in certain circumstances possess fewer constitutional rights." *United States v. Polito,* 583 F.2d 48, 54–55 (2nd Cir.1978) (detention of parolee under parole violator's arrest warrant is not an "arrest" as defined in the Fourth Amendment). Further:

> There is a logical reason to distinguish between the retaking of a parolee and the apprehension of one to be charged with a crime. The parole revocation procedure is not part of a criminal prosecution, and a parolee may be arrested and reincarcerated for reasons that would not permit the arrest or incarceration of other persons. Therefore, it is reasonable to assume an administrative warrant issued for retaking of a parolee should not be judged by exacting Fourth Amendment standards.

*Henrique v. U.S. Marshal,* 476 F.Supp. at 629. *See also Hyser v. Reed,* 318 F.2d at 241 (upholding parole violator warrant noting "Congress evinced no intent to require precisely the same formalities and safeguards as to those contained in the Constitution for criminal arrest"); *Calhoun v New York State. Div. of Parole Officers,* 999 F.2d 647, 650 (2d Cir.1993) (a parole warrant "is an administrative warrant used in retaking and detaining a parolee or conditionally released prisoner."); *Moore v. Smith,* 412 F.2d 720, 725 (7th Cir.1969) (Parole Commission issues "administrative warrant" for alleged parole violations); *U.S. ex rel. Randazzo v. Follette,* 418 F.2d 1319, 1322 (2nd Cir.1969) (a parole violator's arrest warrant "is designated as 'administrative.' Its issuance does not depend on a finding of probable cause."); *Hyser v. Reed,* 318 F.2d at 241 (a parole violator's arrest warrant is an "administrative warrant" and is not required to have "precisely the same formalities and safeguards as to those contained in the Constitution for criminal arrest."); *Jarman v. United States,* 92 F.2d 309, 311 (4th Cir. 1937) (parolee was already "under arrest" and parole violator warrant is not a warrant for arrest as contemplated by the Fourth Amendment).

The government likens parole violation warrants to Immigration and Naturalization Service (INS) deportation warrants, which have long been characterized as "administrative" warrants that need not be issued by a magistrate and do not have the same Fourth Amendment requirements as criminal or judicial warrants. *See Abel v. United States,* 362 U.S. 217, 232, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) (sustaining an INS arrest made "under an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment"); *Flores by Galvez–Maldonado v. Meese,* 934 F.2d 991, 1013 (9th Cir.1990) (Fourth Amendment requirements do not apply to depor-

tation proceedings); *Spinella v. Esperdy,* 188 F.Supp. 535 (S.D.N.Y.1960) (INS administrative warrants do not violate the oath or affirmation requirement of the Fourth Amendment).

Finally, the government argues the revocation of parole is merely a transfer decision without Fourth Amendment implications because it is well-settled that a parolee is still serving his sentence while on parole, albeit outside the prison walls. *See Artez v. Mulcrone,* 673 F.2d 1169, 1170 (10th Cir.1982) (Parole Commission "merely decides whether the individual will serve the sentence inside or outside the prison walls"); *Polito,* 583 F.2d at 54 ("The difference in status and protection is based on the fact that parolees have been convicted of a crime and are still serving their sentence while on parole, albeit not within prison walls"); *Hyser,* 318 F.2d at 235 (parolee has already lost his freedom and "while paroled, he is still a convicted prisoner whose tentatively assumed progress is in the sense of being 'field tested' ").

This court declines to extend the holding in *Vargas–Amaya* to cover parole violation warrants. There is no dispute that supervised release violation warrants must be issued by judicial officers, but parole violation warrants are issued by the Parole Commission. Mr. Sorenson's arguments for extension of *Vargas–Amaya* to cover administrative warrants are unpersuasive given the numerous cases that have characterized parole violator warrants as administrative and as not requiring full Fourth Amendment protection.

### *Conclusion*

For the foregoing reasons, Mr. Sorenson's motion (doc. 1) for enforcement of judgment and petition for habeas corpus is DENIED, this action is dismissed, and all pending motions are DENIED AS MOOT.

IT IS SO ORDERED.